Jose Ramirez-Salgado

NAME
C-11124

PRISON NUMBER
D2-233-L
P.O. Box 5002
Calipatria CA 92233-5002
CURRENT ADDRESS OR PLACE OF CONFINEMENT


CITY, STATE, ZIP CODE

**FILED**

2008 MAY -2  PM 2: 36

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Jose Ramirez-Salgado,
(FULL NAME OF PETITIONER)

**PETITIONER**

v.

LARRY E. SCRIBNER, Acting Warden
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**

and

Jerry Brown,
The Attorney General of the State of
California, Additional Respondent.

Civil No. 08CV0562 WQH (WMc)
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

FIRST AMENDED
PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: Superior Court of California, San Diego County, San Diego CA.

2. Date of judgment of conviction: November 1, 1979

3. Trial court case number of the judgment of conviction being challenged: CR 47435

4. Length of sentence: 20 to life

CIV 68 (Rev. 11/98)

K:\COMMON\FORMS\CIV-68.

5.  Sentence start date and projected release date: <u>November 28, 1979 –</u>
    <u>Upon Board Hearing</u>

6.  Offense(s) for which you were convicted or pleaded guilty (all counts): <u>P.C. Sections</u>
    <u>187 Second degree murder; 245 assault with a deadly weapon;</u>
    <u>211 robbery; and 12022.5 firearm.</u>

7.  What was your plea? (CHECK ONE)

    (a)  Not guilty          ☐
    (b)  Guilty              ☒
    (c)  Nolo contendere     ☐

8.  If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
    (a)  Jury        ☐
    (b)  Judge only  ☐

9.  Did you testify at the trial?
    ☐ Yes   ☐ No


## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the <u>California Court of Appeal</u>?
    ☐ Yes   ☒ No

11. If you appealed in the <u>California Court of Appeal</u>, answer the following:

    (a)  Result: _____

    (b)  Date of result, case number and citation, if known: _____
    _____

    (c)  Grounds raised on direct appeal: _____
    _____
    _____
    _____


12. If you sought further direct review of the decision on appeal by the <u>California Supreme</u>
    <u>Court</u> (e.g., a Petition for Review), please answer the following:

    (a)  Result: _____

    (b)  Date of result, case number and citation, if known: _____
    _____

    (c)  Grounds raised: _____
    _____
    _____
    _____

13. If you filed a petition for certiorari in the <u>United States Supreme Court</u>, please answer the following with respect to that petition:

   (a) Result: _____

   (b) Date of result, case number and citation, if known: _____

   (c) Grounds raised: _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Superior Court</u>?
   ☒ Yes ☐ No

15. If your answer to #15 was "Yes," give the following information:

   (a) <u>California Superior Court</u> Case Number: HC 17291

   (b) Nature of proceeding: Habea Corpus Challenging BPT decision.

   (c) Grounds raised: BPH must follow the same rules as sentencing Court;IAC at BPH; Due Process violations by BPH repeated failures to find Petitioner suitable based on unchanging factors; et al. Misreprisentation of the Facts of the case by DA to BPH; BPH's finding that parole plans in Mexico are unrealistic, violate law.

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes ☒ No  Petitioner requested one and discovery.

   (e) Result: Denied without discovery or hearing.

   (f) Date of result: April 11, 2006.

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Court of Appeal</u>?
   ☒ Yes ☐ No

17. If your answer to #17 was "Yes," give the following information:

   (a) <u>California Court of Appeal</u> Case Number: D048877

   (b) Nature of proceeding: Habeas Petition on BPH Hearing

   (c) Grounds raised: Same as the Superior Court

_____

_____

_____

(d)  Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes  ☒ No   Petitioner requested it and discovery

(e)  Result: __Denied_____

(f)  Date of result: __September 15, 2006_____

18.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
   ☒ Yes  ☐ No

19.  If your answer to #19 was "Yes," give the following information:

(a)  **California Supreme Court** Case Number: _____

(b)  Nature of proceeding: __Habeas Corpus Challenging BPH._____

_____

(c)  Grounds raised: __Same as Above._____

_____

_____

_____

(d)  Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes  ☒ No   Petitioner asked for one and discovery.

(e)  Result: __Denied_____

(f)  Date of result: _____

20.  If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

_____

_____

_____

_____

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your first federal petition for writ of habeas corpus challenging this conviction?

☒ Yes □ No    (IF "YES" SKIP TO #11)

(a) If no, in what federal court was the prior action filed? _____

(i) What was the prior case number? _____

(ii) Was the prior action (CHECK ONE):

□ Denied on the merits?

□ Dismissed for procedural reasons?

(iii) Date of decision: _____

(b) Were any of the issues in this current petition also raised in the prior federal petition?

□ Yes □ No

(c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?

□ Yes □ No

---

CAUTION:

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

CIV 68 (Rev. 11/98)

K:\COMMON\FORMS\CIV-68.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: THE STATE COURT'S OPINIONS DO NOT MEET THE STANDARDS SET FORTH BY FEDERAL LAW, THUS DO NOT QUALIFY FOR THE PRESUMPTION OF CORRECTNESS UNDER 28 U.S.C. Sect. 2254(d)-(f).

Supporting FACTS (state *briefly* without citing cases or law) _____
Please see pages 6 of Attached Memorandum for all the facts of this issue.

This issue addresses the fundamental presumption of correctness of the State Courts findings under the established laws and criteria set forth by the United States Supreme Court and 28 U.S.C. Section 2254(d)-(f). The State Courts were each requested by Petitioner to grant discovery and/or hold an evidentiary hearing on the evidence withheld by the State and by State appointed Counsel in clear violation of State and Federal laws. Each of the State Habeas Courts declined to grant discovery of the evidence needed to support the petition and refused to hold any hearings on the evidence.

Did you raise GROUND ONE in the California Supreme Court?
☒ Yes ☐ No.    Petitioner requested discovery and evidentary hearing in each level of State Habeas Courts.

(b) **GROUND TWO**: State Board have Violated Petitioner's Due Process rights and Equal Protection of Law, and Constitutionally protected Liberty Interest in Parole.

Supporting FACTS (state *briefly* without citing cases or law): _____
Please See Pages 8 through 20 of Attached Memorandum.

Did you raise GROUND TWO in the California Supreme Court?
☒ Yes ☐ No.

(c) **GROUND THREE**: Ineffective assistance of Counsel before, During and After the BPH Board Hearing.

Supporting FACTS (state *briefly* without citing cases or law): _____
Please See Pages 21-24 of Attached Memorandum.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did you raise GROUND THREE in the California Supreme Court?

☑ Yes ☐ No.

(d) **GROUND FOUR**: Petitioner has a Constutionally Protected Right
a Liberty Interest in Parole.

Supporting FACTS (state *briefly* without citing cases or law): _____
Please See Pages 25-28 of Attached Memorandum.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did you raise GROUND FOUR in the California Supreme Court?

☒ Yes ☐ No.

(e) GROUND FIVE: The State has Violated the Plea Bargain at all Parole Hearings by Claiming 'Facts' not Adjudicated in Court in Support of Finding Petitioner Unsuitable for Parole.

Supporting Facts: Please See Pages 29-31 of Attached Memorandum.

Did you raise Ground Five in the California Superior Court?
X Yes _ No.

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☒ No

24. If your answer to #23 is "Yes," give the following information:

   (a) Name of Court: _____

   (b) Case Number: _____

   (c) Date action filed: _____

   (d) Nature of proceeding: _____

   _____

   (e) Grounds raised: _____

   _____

   _____

   _____

   _____

   (f) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes  ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

   (a) At preliminary hearing: _____

   _____

   (b) At arraignment and plea: _____

   _____

   (c) At trial: _____

   _____

   (d) At sentencing: _____

   _____

   (e) On appeal: _____

   (f) In any post-conviction proceeding: _____

   _____

   (g) On appeal from any adverse ruling in a post-conviction proceeding: _____

   _____

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☒ Yes  ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
  ☐ Yes  ☒ No

  (a) If so, give name and location of court that imposed sentence to be served in the future:

  _____

  (b) Give date and length of the future sentence: _____

  _____

  (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
  ☐ Yes  ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court: _April_ _25_ , 2008

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_April 25_ , 2008          x _[signature]_

(DATE)                    SIGNATURE OF PETITIONER

Jose Ramirez-Salgado  CDCR# C-11124
Calipatria State Prison
D2-233-L
P.O. Box 5002
Calipatria CA. 92233-5002
Petitioner, In Pro Se


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

JOSE RAMIREZ-SALGADO,           ) CASE NO:_____
   Petitioner,                  )
                                      )
  Vs.                            )
                                        )
L.E. SCRIBNER, Warden(A),        )
   Respondent,                  )
                                       )
JERRY BROWN, Attorney General of )
California,                      )
6    Additional Respondent.      )


MEMORANDUM OF FACTS,
POINTS AND AUTHORITIES
ON HABEAS CORPUS PETITION.
FIRST AMENDED

## TABLE OF CONTENTS

Table of Exhibits ........................................... ii

Table of Authorities ........................................ ii

Memorandum of Facts ......................................... 1
          Parole Hearings ................................... 3
          State Habeas Courts .............................. 5
          Note ............................................. 5

Memorandum of Points and Authorities ........................ 6

Issue I:  State Courts deprived Petitioner of Due
Process and Equal Protection of law by
Refusing to hold an Evidentiary Hearing
and Denying Discovery. ...................... 6

Issue II: State Parole Board have Violated Petitioner's
Due Process and Equal Protection of Law,
and Constitutionally Protected Liberty
Interest in Parole. ........................ 7

A.
Board has Continued to use the Unchanging
Facts of the Commitment Offense to Deny
Parole after Petitioner has Served the
Minimum Term Set by Law. ................... 7

B.
The BPH Violated Petitioner's Due Process
Rights by Arbitrally Determining That His
Parole Plans in Mexico where not Viable nor
Realistic - Thus not Suitable for Parole. ... 8

C.
The Board Violated Petitioner's Civil Rights
Under the ADA and Constitutions by Holding
Petitioner Responsible for CDCR Policies that
Keep Prisoners with Seizures from Attending
Vocational Training Programs. Thus Unsuitable
for Parole. .................................; 10

D.
Board Considers Crime to be Especially Grave,
Heinous, Atrocious and Inexplicable for a
Second Degree Murder without Stateing any
Facts nor Evidence to Support Their Boiler
Plate Catch Phrases. ....................... 11

E.
The Board Ignores or Missuses Evidence and
Facts that Tend to Show Suitability for
Parole in Order to Deny Parole. ............ 13

F.
      The Board is Required by Law to Follow
      the Same Laws, Rules and Regulations as
      the Sentencing Court Does. ................    15

Issue III:
      Ineffective Assistance of Counsel Before,
      During and After the BPH Board Hearing. ......    20

Issue IV:
      Petitioner has a Constitutionally Protected
      Liberty Interest in Parole. ................    24

Issue V: The State has Violated the Plea Bargain at
      All Parole Hearings by Claiming "Facts" not
      Adjudicated in Court in Support of Finding
      Petitioner Unsuitable for Parole. ...........    28

Conclusion .........................................    30

## TABLE OF EXHIBITS

A .... Petitioner's Requests for Discovery and Evidentary
      Hearings in State Courts. ......................

B .... State Habeas Court Denials and Opinions.

C .... Board Hearing Transcripts.

D .... Parole Plans, Job Offers, Property, etc..

E .... In re Criscione, Santa Clara Superior Court.

F .... Documents Sent to Board Appointed Attorney.

G .... Prisoner Evaluation Dated 04/05.

H .... BPT Lifer Prisoner Decision Face Sheet, 11/01/05.

I .... In re Rutherford/In re Lugo Court Orders of 02/15/06
      and Stipulation of 03/23/06.

## TABLE OF AUTHORITIES

United States Constitution 4th, 5th, 6th, 8th, and 11th
      Amendments. ............. Though
                                           Out.

United States Code Title 8 Sections 1362, ................    22

Model Penal Code Section 4.01. .........................    13

Opinions of the California Attorney General
      82 Ops.Cal.Att.Gen. 242........................    7

California Criminal Jury Instructions CALJIC 4.02. ........    13

California Rules of Court
      Rule 421. ................................... 17
      Rule 423. ................................... 17

California State Bar's Rules of Professional Conduct.
      Rule 3-110(c). ............................. 22
      Rule 3-700. ................................ 22
      Rule 3-700(D)(1). .......................... 22
      Rule 7-105. ................................ 29

California Penal Code
      Sections
          187 ................................... 7
          211 ................................... 7
          245(a) ................................ 7
          1170(b) ............................... 17
          1192.2 ................................ 16,28
          1204 .................................. 17
          3041(a) ............................... 15,18,
                                    27,28
          3041.5 ................................ 20,22
          3041.7 ................................ 20,22
          12022.5 ............................... 5

California Code of Regulations, Title 15
      Sections
          2256 .................................. 20,22
          2402(c)(1)............................. 12
          2402(c)(3) ............................ 13
          2402(d)(2) ............................ 14
          2402(d)(4) ............................ 14
          2402(d)(8) ............................ 10

Case Laws

Almendarez-Torres v. United States (1998) 523 US 224, 251 . 17
Apprendi v. New Jersey (2000) 530 US 466,484, 489 ........ 16,17,
                                              27,28
Blakely v. Washington (2004) 542 US 296 .................. 18,27,
                                              30.
Boykin v. Alabama (1969) 395 US 238, 242 ................. 17
Briggs v. Terhune (CA 9th.Cir. 2003) 334 F.3d 910, 914 .... 29
Davis v. State Bar (1983) 33 Cal.3d 213, 239-240 .......... 29
Evens v. Chavis (2006) __ US UU, 126 S.Ct. 846 ........... 6
In re Criscione, Case No: 71614, Exhibit E ............... 11,25
In re DeLuna (CA 6th 2005) 126 Cal.App.4th 585, 591 ....... 26
In re Lawerence (CA 2d 2007) 2007 D.J.DAR. 7363, 7372-74 .. 7,8,27
In re Lee (2006) 143 Cal.App.4th 1400,1412 ............... 27
In re Lowe(CA 6th 2005) 130 Cal.App.4th 1405, 1421 ........ 26
In re Marquez (1992) 1 Cal.4th 584, 596 .................. 22
In re Rosenkrantz (2002) 29 Cal.4th 616, 654 ............. 26
In re Rutherford/In re Lugo Case No: SC135399A ............ 26
  (Exhibit I )
In re Scott (2004) 119 Cal.App.4th 871, .................. 17,25,
                                              29,30.

TABLE OF AUTHORITIES
(Continued)

Case Law Continued.

In Re Smith (CA6th 2003) 114 Cal.App.4th 343, 366, 369 .... 11,27
In re Snyder (1985) 472 US 634, 644-45 ..................... 29
Jones v. United States (1999) 526 US 227, 243 ............. 16,29
Jones v. United States ( ) 530 US ___, 489 ............. 23
Martin V. Marshall (N.D.Cal. 2006) 431 F.Supp.2d 1038, 1043,
                              1046-1047 ........ 7,9,31
Mullaney v. Wilbur (1975) 421 US 684, 697-98 .............. 17
Olguin v. State Bar (____) 28 Cal.3d 195, 199-200 ......... 29
People v. Arbuckle (1978) 22 Cal.3d 749, 754 ............. 17
People v. Bunyard (1988) 45 Cal.3d 1189, 1215 ............ 23
People v. Galloway (1974) 37 Cal.App.3d 905, 908 ......... 17
People v. Drew (1978) 22 Cal.3d 333 ...................... 13
People v. Harvey (1979) 25 Cal.3d 754, 758 .............. 17
People v. Kilpatrick (CA3d 1980) 105 Cal.App.3d 401, 413 .. 17,28
People v. Ledesma (1987) 43 Cal.4th 171 .................. 23
People v. Lewis (1991) 229 Cal.App.3d 259 ................ 18
People v. Valdivia (1960) 182 Cal.App.2d 145 ............ 17
People v. Wallace (2004) 33 Cal.4th 738 ................. 17
People v. Warren (1959) 175 Cal.App.2d 233 .............. 17
Reno v. Flores (1993) 507 US 292, 306 ................... 22
Ring v. Arizona (2002) 536 US 584, 602 .................. 18
Rosenkrantz v. Marshall (C.D.Cal. 2006) 444 F.Supp.2d 1063, 11,12,
                              1082,1083,1085 ............ 14,15
Saakian v. INS (CA1st 2001) 252 F.3d 21,25 .............. 23
Santobello v. New York (1971) 404 US 257,262 ........... 28
Sochor v. Florida (1992) 504 US 527, 540 ............... 18
Strickland v. Washington (1984) 466 US 668,688,693 ...... 23
Taylor v. Maddox (CA9th 2004) 366 F.3d 992, 1001 ........ 6
Theard v. United States (1957) 354 US 278, 281 ......... 29
Thompson v. Davis (CA9th 2002) 282 F.3d 780, 786 ........ 10
United States v. Booker (2005) 543 US 220, 125 S.Ct. 738,
                              749, 760 ........ 18
United States v. Johnson (CA9th 1999) 187 F.3d 1129, 1134 . 17,28

///
///

## MEMORANDUM OF FACTS

Petitioner Jose Ramirez-Salgado was born in rural Mexico on April 24, 1960. At the age of Four (4) Petitioner fell out of a tree and landed on his head. This trauma caused brain tissue damage that has caused life long epilepsy and other problems. In 1967 Petitioner's Father passed away after a long illness of the lungs.

In 1970, Petitioner's Mother left him with his Faternal Grandfather while she came to the United States on a Work Visa. For the next three (2) years, Petitioner lived and worked on his Granfather's ranch/Farm, which was located near San Jose, a small village about sixty (60) miles from Guadalajara, Mexico. While his Mother relocated to San Diego California . Petitioner' Mother became a U.S. Citizen several years later after Petitioner's incarceration.

In late 1972, Petitioner ran away from his Grandfather's Farm to find his Mother and be with her since her job would not allow her to visit and his Grandfather could not afford to leave the farm to visit her. Petitioner hiched rides and other modes of transportation, when his funds would allow all the way to Tijuana at the age of twelve (12), alone. In Tijuana, Petitioner learned how to survive on the streets - getting involved with thriving drug culture there, among other things to survive. Petitioner soon learned how to cross the boarder with out getting caught, and did so to find his Mother in San Diego. But the damage was already done, and it would effect Petitioner's judgements and actions for many years to come. The use of drugs and alcohol to cope with problems, and the use of violence as the rule instead of being the last resort, to establish and protect one's self.

When Petitioner did cross the boarder and finally found his Mother, he was greeted by his Mother and her Boyfriend. A situation he was not prepared for nor expecting. His Grandfather had already informed his Mother of his running away. Like any Parent, She was glad that he was alive, happy to see him, and angry that he had run away, and caused so many people so many sleepless nights of worry. Petitioner's Mother was also upset that Petitioner's illegal entry could cause her to lose her visa and chance to make new life in the U.S. for her family. All of these emotions came

1

out and confused the Petitioner even more. His Mother's boyfriend
did not help matters any by expressing 'Fatherly' concerns and
personal concerns of the possibility of Petitioner's Mother
suffering deportation due to her son's stupidity. These actions
just re-enforced the first impression of anamosity of the Petitioner
due to his Mother replacing his Father and him with another man.

Over the next seven (7) years, tansions increased between
Petitioner, Petitioner's Mother, Petitioner's Mother's Boyfriend.
Every time Petitioner would get to the point that he wanted to hurt
his Mother for siding with her boyfriend and not with him, Petitioner
would stop a Police Officer and tell him that he was illegally in
the country. The Officer would then take him to the boarder, and
send him accross. Petitioner would then get back into the strret
life to keep alive. Until he would calm down and start missing his
Mother enough to cross the boarder once again. Thus a vicious
circle developed.

One day Petitioner found a .22 cal. pistol in a paper bag.
He decied to keep it and that the next time he returned to Mexico
he could show it to a few people, establishing the word that he
was packing and could better protect himself. And he could also
sell it down there if needed. Life on the strrets is dangerous for
a child at any time, but in the 70's Tijuana was a very dangerous
place for a child. Petitioner's Mother found the gun and took it.

Petitioner used drugs and alcohol since shortly after arriving
in Tijuana the first time. There and in San Diego. This lead of
course to more confilicts between Petitioner, His Mother and Her
Boyfriend. Causing more retreats to Mexico by Petitioner. On one
of these periods of time, Petitioner met a girl and they fell into
love and lust. A child was conceived and born from that relation-
ship by the time Petitioner turned eighteen (18). Shortly after his
minteenth (19th) birthday, his girlfriend's parents, convinced her
to return to their home in Tijuana, taking Petitioner's and Her
child with her.

Petitioner felt the world closing in on him, and turned to
heavy drug and alcohol use to cope with it. One day, he remembered
the .22 that his Mother had taken from him. While waiting for her
to leave the house, Petitioner drank and smoked pot and once his

"other left for work, Petitioner returned to her house and retrieved the gun from where she had put it. Petitioner then returned to his friend's place and drank some more and did more drugs, trying to passout. This was June 16, 1979, the day that Petitioner ended up committing his commitment offenses. The stress and substance abuse of nearly seven (7) years came to a head, and Petitioner snapped.

After his arrest, the District Attorney's Office conducted indepth interviews and due to the facts that they had, offered the Petitioner a plea bargain for second degree murder with gun use enhancements, with a sentence of nineteen (19) years to life. The minimum ineligibility for parole would expire some where between April and June 17, 1998. And the Petitioner would then be elegible for parole. Petitioner plead guilty to Second Degree Murder and use of a firearm in the commission. The Court accepted the plea and sentenced him 15 to life plus 4 year for the firearm.

### PAROLE HEARINGS.

In each of the Parole Board Hearings (BPH), the commissioners have used most of the following reasons at one time or another to deny parole: The number of victums; the victums were vulnerable; callous disregard for human life; drug and alcohol abuse; unstable family life; unstable relationships - with girlfriend and their child; crossing the boarder several times; High custody score; number of CDC-128's and CDC-115's; Failure to learn a vocation; failure to learn better english; Petitioner's parole plans in Mexico are inadequate.

Each Board has refused to take into account the stressors of Petitioner's life that lead upto the crimes; his young age; the situation at the time; Petitioner's epilepsy that precludes him from participating in Vocational Instruction Courses per Prison Policy. That after Petitioner's debriefing and coming to the SNY Program, he had a long period without any write-ups/diciplinary actions; That through out his incarceration, Petitioner has matured - which lead him to debrief; That the Situation with his Mother and Her Boyfriend, had changed, They got married, and Petitioner accepted the relationship and even became friends with his Step-Father; Petitioner's Grandfather paased away, and left part of the farm to Petitioner, upon his release from prison; That Petitioner's

Mother passed away while on her way to visit him. That after her Death, Petitioner got into truble for drinking. Petitioner's Mother left him a sizable trust available upon his release from prison and his neturn to Mexico. That Petitioner has established very close ties with his Family while in prison. That Petitioner has viable and adequate Parole plans for work, living arraingements, and support in Mexico. That Petitioner has the needed skills and experiences for employment and running a farm in Mexico.

The Board also ignors the Psychological report that placed Petitioner as no greater threat to society than anyone else, as long as he avoided gangs, drug use and alcohol use. In San Jose Mexico Drugs and Gangs are not a problem, and that Petitioner has friends and family there to help him stay away from adcohol.

The Boards have told Petitioner that he would have better jobs in Mexico if he learned English better, while ignoring the facts that Petitioner obtained his GED in prison, showing a High School level of English mastery, et al.. That in Mexico, Spanish is the National Langaagennot English. The Board also Clearly ignores the fact the Petitioner has Epilepsy, thus placing him squarly under the protection of ADA. Prison Policy bars Petitioner from taking Vocational Classes due to safety and security of the Institution and such concerns would effect his future employement opportunitied in Mexico.

The various Boards have raised concerns about his crossing the boarder as a child. That he would do so again as an adult., They ignore the fact that Petitioner has matured and clearly knows that such action would lead to his incarceration for the rest of his life. Petitioner has spent approximately twenty-nine (29) years in prison, and is not in anyway eager to spend the rest of it in prison.

The Board uses the Crime to justify inegibility, even nine (9) years after the Maximum Inegibility Period for Parole established by the Legislature of California, for that crime.

Even though Petitioner was and has been willing to discuse the crime with the Board, the Board has used the current D.A.'s version of the crimeand the probation report that contradicts the Plea Agreement and Accepted Plea of Petitioner in Court.

4

## STATE HABEAS COURTS

Petitioner sought review of the Parole Board's decisions in the State Courts. In each Court, Petitioner asked for discovery of BPH documents and Attorney's 'Lifer Packet" wich under California laws, belong to the Client. Petitioner also asked for an evidentary hearing in each court. All three state courts refused to grant discovery or an evidenatry hearing. Petitioner also sought the transcripts of the Plea Hearing and Sentenceing Court Hearings to support issues raised. But the Courts refused to do their duty.

Each State Habeas Court denied Petition and the Superior Court of San Diego County was the only expressed opion issued.

////

It should be noted that Petitioner received a one year sentence for possession of a weapon by a prisoner while incarcerated and as an participant in prisons' gangs culture.

According to the Minimum Eligible Parole Date setforth by CDCR, See Exhibit H, Petitioner became eligible on May 30, 1992 for parole under the laws of California. Petitioner does not know if this is completely accurate, but will so stipulate at this time that it most likely is. It also includes the one year sentence for the above mentioned offense.

////

////

ISSUES

I

THE STATE COURTS' OPINIONS DO NOT MEET THE STANDARDS
SET FORTH BY FEDERAL LAW, THUS DO NOT QUALIFY FOR
THE PRESUMPTION OF CORRECTNESS UNDER 28 USC SECTION
2254 SUBSECTIONS (d) THROUGH (f).

FACTS

Petitioner requested his legal property from state appointed
counsel in accordance with California State Bar's Rules of
Professional Conduct, Rule 3-700, see Issue 3, pp. 23 ) Which
includes the 'Lifer Packet' issued to counsel by the Board. From
the Superior Court of California, San Diego County, Petitioner
sought his Plea Bargain Documents, and the Transcripts from the
Plea Bargain Hearing and Sentencing, which counterdicts the current
standing of the State and the Board. The State Bar refused to
hold counsel to the laws and the court refused to answer the request.
Calipatria State Prison refused to copy Petitioner's Case File.

When Petitioner filed his Petitions for Writ of Habeas Corpus
in each of the levels of State Courts, he requested each Court to
grant discovery of these documents and Board Documents to support
the writ. Each and every State Habeas Court denied the request and
denied Petitioner's requests for an evidentiary hearing as well.
See Exhibits A and B respectfully for requests and denials.

Petitioner made it clear in the body of the petition that the
requested items would support Petitioner's stand on the issues.
Thus the State Habeas Courts were clearly aware of their value in
adjudicating the issues. Instead of granting discovery or a hearing,
the Courts chose to turn a blind eye to these facts.

LAWS

Title 28 U.S.C. Section 2254(d)-(f) places the burden of
proof upon the applicant to show that the State Court's decisions
do not gain the presumption of correctness afforded by law. It
also places upon the petitioner the burden to show why he failed
to develop the facts in the state courts. Without such burden being
meet, the Federal Courts are bound to the rulings of the State,
and cannot hold an evidentairy hearing on the merits.

In Taylor v. Maddox ((CA 9th Cir. 2004) 366 F.3d 992, 1001)
the Ninth Circuit held that per the Supreme Court Ruling in the

6

<u>Miller-el</u> (537 U.S. at 346):

> "(T)he state court fact-finding process is undermined where the state court has before it, yet apparently ignores, evidence that supports petitioner's claim."

The Court goes on to say:

> "Obviously, where the state court's legal error infects the fact-finding process, the resulting factual determination will be unreasonable and no presumption of correctness can attach to it." <u>Taylor</u>, supra, at 1001.

The Supreme Court held in <u>Evens v. Chavis</u> ((2006) ___ U.S. ___, 126 S.Ct. 846) on point to the rest of the Ninth's holdings in <u>Taylor</u>, that an evidentiary hearing is <u>required in most cases</u> in the state courts in order for their decisions to be held "reasonable" under the AEDPA and 28 U.S.C. Sect. 2254.

## CONCLUSION

The State Courts did not hold any evidentiary hearings in this matter and refused to grant discovery — Three times. The Superior Court even tried to tie this petition challenging the State Parole Board's denial of parole suitability to the Petitioner's earlier habeas challenge of the conviction. Instead of what it actually was.

As it will be shown through out this petition, Petitioner was denied due process and equal protection of law at the hearing. State Appointed Counsel was intentionally ineffective so that she would be appointed again by the Board. The Board has and will continue to flaunt the numerous State and Federal Court rulings and orders, as well as ignore their own rules and regulations. Petitioner has the Constitutional Liberty Interest in Parole, which the Board violated and the State Courts turned a blind eye to. The evidence sought by Petitioner clearly establishes the illegal actions of the State and the Board, as well as ineffective assistance of counsel.

The State Court's opinions do not meet the standard of reasonabliness set forth by the High Court. Thus do not bar this Court from reviewing the Petition and holding an hearing on facts and evidence.

///
///
///

7

II

## STATE PAROLE BOARD HAVE VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION OF LAW, AND CONSTITUTIONALLY PROTECTED LIBERTY INTEREST IN PAROLE.

A

## BOARD HAS CONTINUED TO USE THE UNCHANGING FACTS OF THE COMMITMENT OFFENSE TO DENY PAROLE AFTER PETITIONER HAS SERVED THE MINIMUM TERM SET BY LAW.

- FACTS -

Petitioner was sentenced under California Penal Code Sections 187 - Second degree murder, 15 to life; 211 - robbery; 245(a) - assault with a deadly weapon; and 12022.5 - Firearm use enhancement for 4 years. Yeilding a 19 to life sentence issued on November 28, 1979. Even without pre-sentence credits, the maxium minumum for parole ineligiblity expired on November 28, 1999. With the pre-sentence credits, Petitioner became legally eligible for parole in June of 1998, nearly nine years ago.

Yet, the Board continues to rely upon the crime to deny parole, at the November 1, 2005 Parole Hearing, 17 years after the State Legislature's MAX. inelgibility period ended. Exhibit C, pp. 27-30.

- LAWS -

On December 22, 1999 the California Attorney General issued Opinion No: 99-322 (82 Ops.Cal.Atty.Gen. 242) concerning life top sentences in California. It clearly states that Legislature set the minium ineligibility period for parole at 15 to life or 25 to life, etc., at the set term of 15 or 25 years, after which the prisoner is considered eligible for parole. Martin v. Marshall ((N.D.Cal. 2006) 431 F.Supp.2d 1038, 1046-47) and In re Lawrence((C.A.2d 2007) 2007 D.J.DAR. 7363, 7372-74 (Exhibit D)) the courts have held that once a prisoner has served the full minimum term, reliance upon commitment offenee to deny parole impinges on the Prisoner's Constitutional Liberty Interest in parole and violates Due Process of both the State's and Federal Constitutions.

In Lawrence, the commitment offense "does not provide "some evidence" () present release would represent an "unreasonable risk" of danger to the community." (at pp 7374.) The Lawrence Court compared numerous commitment offenses of other cases challenging BPH denials to Lawrence's. Their final anylasis is clear - EXCEPT for those rare cases like Charles Manson's - after serving the minium

term set by law, the commitment offense(s) is no longer "some evidence" of future threat to society. Neither the Board, Governor, nor the Courts may utilize such to deny parole suitability.

> "Other than rehabilitation, imprisonment of those who are convicted of committing crimes generally serves and is justified by one or more of three societal goals:
> (1) Retribution - that is, punishment of the offender commensurate with the seriousness of the crime;
> (2) Deterrence of future offenses by the offender and other potential offenders;
> (3) Incapacitation of the offender so she is not free to commit other offenses.
> When the Legislature sets an indeterminate maximum term with a fixed minimum term, the latter can be viewed as setting the period of imprisonment deemed necessary to satisfy the first two purposes, while the justification for continued imprisonment beyond that fixed minimum depends on the need for continued incapacitation of the offender." Lawrence, supra, 2007 D.J.DAR. at pp. 7374-75.

## - CONCLUSION -

Since the State Court and even the Attorney General conclude that after the minimum term has been served, relying on the commitment offense to justify denying parole in the majority of parole hearings, violates the letter and intent of the law as well as clearly violates Due Process and Liberty Interests of the Prisoner. It is improper for the Board to deny Petitioner parole based upon his commitment offenses after he has completed the MINIMUM term set by law - 20 years, which expired on or about June 1998. Twenty years after his arrest, since Petitioner did not bail out of jail during the court proceedings, and thus earned per-sentence credits.

## - B -

### THE BPH VIOLATED PETITIONER'S DUE PROCESS RIGHTS BY ARBITRAILY DETERMINING THAT HIS PAROLE PLANS IN MEXICO WHERE NOT VIABLE NOR REALISTIC - THUS NOT SUITABLE FOR PAROLE.

## - FACTS -

At the hearing, Petitioner has presented to the Board letters offering housing, jobs, and support by family and friends. Petitioner also provided legal documents showing the his Grandfather left him property (farm) in San Jose Mexico, and that his Mother left him a trust fund that would provide a substantial capital and support upon Petitioner's release and return to Mexico. Exhibit D.

The Board Stated the offers and plans are unrealistict without stating why they are unrealistic. Exhibit C, pp. 27-30., Or how they determined such. The job offers are from businesses in Mexico. The Property documents are official Mexico Government Documents. The Inheritances from Petitioner's Grandfather and Mother are certified. There is absolutely no evidence to the contrary. Yet, the Board quotes 'boiler plate' verbage of 'unrealistic parole plans' without any facts to support it.

## - LAW -

15 CCR Section 2402 'Determination of Suitability' subsection (d) 'circumstances tending to show suitability' (8) 'understanding and plans for future':"The prisoner has made realistic plans for release <u>or has</u> developed marketable skills that can be put to use upon release."

> "The subsection does not require that a prisoner have
> viable parole plans in the United States. Petitioner,
> ..., has realistic parole plans in Mexico. He has at
> least two job offers and a place to live." <u>Martin v.</u>
> <u>Marshall</u> (N.D.Cal. 2006) 431 F.Supp.2d 1038, 1046.

Like Martin, Petitioner has realistic plans in Mexico. Unlike Martin, Petitioner has both land and money in Mexico upon release. Outside of "boiler-plate" verbage, the Board has no fact that Petitioner's plans are not viable and realistic, what so ever.

The Board stated that the parole plans were unrealistic "in that he does not have acceptable employment plans..." What? A job offer to do painting is unacceptable? Do they think that Mexicans live in un-painted hovals? Owning and operating a farm <u>in Mexico is not</u> possible or feasable? Are they racist or just ignorant???? Do they beleive that over fifty-thousand U.S. dollars is worth over a half-million pesos, will not provide adequate to support the Petitioner until he can get the farm running at a profit?
No evidence that Petitioner's plans are unfeasable nor unrealistic were presented to the Board. None of the Board have any professional knowledge of economic of Mexico, that they could refer to. Their 'boiler-plate' response is not based upon any evidence or factual information presented at the hearing. Thus, clearly violates Due Process and the laws governing parole hearings.

## - C -
### THE BOARD VIOLATES PETITIONER'S CIVIL RIGHTS
### UNDER THE ADA AND CONSTITUTIONS
### BY HOLDING PETITIONER RESPONSIBLE FOR
### CDCR POLICIES THAT KEEP PRISONERS WITH SEIZURES
### FROM ATTENDING VOCATIONAL TRAINING PROGRAMS.
### THUS UNSUITABLE FOR PAROLE.

### - FACT -

At each Board hearing the fact that Petitioner suffers from epilepsy is admitted by the Board. Yet, at each hearing, the Board states that Petitioner has failed to obtain Vocational Training, thus unacceptable for parole. At each hearing, Petitioner has tried to have Board appointed Counsel introduce the CDCR and Prison's policies that exclude from vocational classes, those with any types of seizure disorders. Board appointed Counsel has refused each time, claiming that the Board already knows this.

### - LAWS -

"Concluding that Congress did in fact liken disability discrmination to racial discrimination, we held that the ADA applies to State Correctional Systems. Id. The same holds true in the parole context: since a parole board may not deny African Americans consideration for parole because of their race, and since Congress thinks that discriminating against a disabled person is like Discriminating against an African American, the parole board may not deny a disabled person consideration for parole because of his disability." Thompson v. Davis (9th Cal. 2002) 282 F.3d 780, 786.

The Thompson Court went on to quote Supreme Court case law that clearly authorizes and supports their findings.

15 CCR Sect. 2402(d)(8) States: "The prisoner has made realistic plans for release or has developed marketable skills ...." And as shown in "B" Petitioner has realistic plans for release, even if the Board cites 'boiler-plate' nonsense to say that he doesn't. It is Clear by the physical evidence that the Prison has a legitamit reason to keep inmates with seizures from Vocational Training in many incidencs, to redue the chances for sever injury to the inmate as well as others. It is also clearly shown that the Board relies on 'boiler-plate' verbage that is not supported by evidence or law.

To tell the prisoner to get a vocation while knowing that the policies forbid that prisoner from getting such is 'catch-22' situation. It cannot be done and violates ADA and Due Process.

D

BOARD CONSIDERS CRIME TO BE ESPECIALLY GRAVE,
HEINOUS, ATROCIOUS AND INEXPLICTABLE FOR A
SECOND DEGREE MURDER WITHOUT STATING ANY
FACT'S NOR EVIDENCE TO SUPPORT THEIR
BOILER PLATE CATCH PHRASES.

As shown in the transcripts of the Board Hearing, the Board
clearly makes use of boiler plate catch phrases through out the
hearing without ever pointing to any sufficient evidence nor any
comparison to other second degree murders as required by regulations.
Exhibit C, espc. pp. 27-30.

- LAWS -

The California Court of Appeal for the Sixth District found
in the case of In re Smith ((CA6th. 2003) 114 Cal.App.4th 343,
7 Cal.Rptr.3d 655) the following:

"Second degree murder requires express or implied
malice.... For this reason, it can reasonably be
said that all second degree murders by definition
involve some callousness.... As noted, however, parole
is the rule, rather than the exception, and a conviction
for second degree murder does not automatically render
one unsuitable." 114 C.A.4th at pp. 366.

In a very detailed evidentary hearing by the Superior Court of
California, for the County of Santa Clara, in the case of In re
Criscione, Exhibit E - Findings and Order, Case No: 71614, dated
August 30, 2007. Shows that the Board, in 100% of the hearings reviewed
found the crimes to be especially atrocious, heinous, or callous.
At pp. 9. On pages 12-13, the Court pointed out that the term
"especially" can not possibly apply in 100% of cases, "yet that is
precisely how it has been applied by the Board." The Court goes
on to point out that there is something definately wrong where the
board forces every crime into their catch phrases for denial. See
pp. 26-30. Under the ADEPA the findings are binding on the court.

Rosenkrantz v. Marshall (C.D.Cal. 2006) 444 F.Supp.2d 1063:

"As the California Courts have concluded, an 'inexplicable'
motive' is "one that is unexplained or unintelligible, as
where the commitment offense does not appear to be related
to the conduct of the victim and has no other discernable
purpose." (Citation.) To call Petitioner's crime "inexplicable,"
as the BPT has, contradicts all of the evidence in the
record. In fact,...., Petitioner's crime was the result of
significant emotional stress in his life, a factor that
actually weighs in favor of ... parole suitablility." at pp. 1082.

"Second, in this case, the circumstances of Petitioner's crime do not amount to some evidence supporting the conclusion that Petitioner poses an unreasonable risk of danger if released. As discussed, "(i)n the parole context, the requirements of Due Process are met if some evidence supports the decision." Significantly, the evidence underlying the decision must be supported by "some indicia of reliability." (Citations.) Otherwise, it does not constitute "some evidence."" Rosenkrantz, supra, at pp. 1083.

As it will be discused in Subsection 'E', next, Petitioner was under a great deal of emmotional stress at the time of the crime. He had just turned 19, lost his Girlfriend and their Child, to her Parents, and had had seven years of termole in his family life as well as heavy drug and alcohol abuse for over six years. This is what caused the rampage. Clearly explaining the grounds for the crimes. A child strikes out without regard to whom it hurts.

The victim that died, exited his home, turning on the poarch light and slamming the door, while yelling. This startaled an emmotionally upset child, who responded by firing a single shot towards the supprising noise, and inadvertantly killing an innocent person.

Yet, the Board, ignores this clear evidence with each of its standard "boiler plate" verbage it uses to justify it's denial of parole suitablity. Just claiming that there is no explination for a crime, does not actuall proves that there is no reason for it. And YES, the loss of life is exceptionally bad and cruel to his family. And deserves strong condemnation. But, as the evidence shows to be true, Petitioner did not inflict this pain and suffering intentionally. He did not seek out the victim to kill. Had the victim, not exited his home in such a loud and startaling way, Petitioner would not have reacted in the manner that he did.

15 CCR sect. 2402(c)(1) Commitment Offense:

"The prisoner committed the offense in an especially heinous, atrocious or cruel mamner. The factors to be considered include: (A) Multiple victims were attacked, injured or killed in the same or separate incidents. (B) The offense was carried out in a dispassionate and calculated manmer, such as an excution-style murder. (C) The victim was abused, defiled or mutilated during or after the offense. (D) The offense was carried out in a manner which demonstrates an exceptionally calous disregard for human suffering. (E) The motive for the crime is inexplicable or very trivial in relation to the offense."

As held by the Criscione Court, it is very easy for the Board to twist the facts of every case before it to fit these criteria, even when it clearly does not apply. The Smith Court stated that ALL second degree murders involve some callousness. And Rosenkrantz Court explained that "an inexplicable motive" is one that is not explained and is not related to the actions of the victim.

Here, contrary to the State's wishes and the Victims Family, the evidence that was before the San Diego's D.A. back in 1979 shows that if the victim had not made the ruckus that he did, the Petitioner would not have fired that fatal shot. Yes, the petitioner was acting recklessly and indifferent to the feelings of others. But, He had reached the breaking point and had snapped. The D.A. knew this and knew under the laws at the time, that the Petitioner would have had a good chance at trial to prove mental incompetence and unconciousness due to voluntary intoxication that would have negated malice under then Penal Code Sections 22 and 25; CALJIC 4.02 Insanity instructions based at the time on Model Penal Code Sect. 4.01, according to People v. Drew ((1978) 22 Cal.3d 333, 149 Cal.Rptr. 275, 583 P.2d 1318) where the California High Court abolished the M'Naghten test in favor of M.P.C.'s test. Which with Petitioner's epilepsy caused by head trauma, would have clearly negated expressed and implied malice required for second degree murder.

All of these facts were previously acknowledged in open court during plea bargain hearing and sentencing. Which is why the State Courts refused to grant discovery of the transcripts.

### E

### THE BOARD IGNORS OR MISSUSES EVIDENCE AND FACTS THAT TEND TO SHOW SUITABILITY FOR PAROLE IN ORDER TO DENY PAROLE.

### - FACTS -

The Board has repeatedly pointed to Petitioner's past unstable relationships with family and his ex-girlfriend prior to the commission of the offense as reason for the finding of unsuitability for parole. Exhibit C, pp. 27-30. 15 CCR Section 2402(c)(3). Without stating how such old news and very outdated actions of an adolescent has any bearing twenty plus years later.

Petitioner from the early age of ten was a product of a broken home. His Father passed away after a long illness and then his Mother leaves him to go to another country. At twelve, he left his Grandfather's farm to find his Mother. He lived on the streets of Tijuana until he could find a way across the boarder. He finds his Mother only to find her dating another man. This unstable situation caused emmotional stress, confusion, anger, resentment, etc.. Drugs and Alcohol became a daily escape. At ninteen, his girlfriend and their child returned to her parents home, at the urgings of her parents.

For the Board to hold such information as grounds of Petitioner's present unsuitability instead of evidence of extream emmotional streess that likely will not re-occure (15 CCR Sect. 2402(d)(4)), flies in the face of reality. They clearly ignore the fact that since his incarceration, Petitioner has changed his relationship with his Mother, her Husband, and his family. The changes have brought stability (15 CCR Sect. 2402(d)(2)) to this relationship. The Board insinuated that Petitioner should try to find his Ex-Girlfriend and Child, and disrupte their lives to prove to the Board that he has MATURED. That really sounds mature and adultlike.

## - LAWS -

"The susceptability of juveniles to immuture and irresponsible behavior means "their irresposible conduct is not as morally reprehensable as that of an adult." Thompson (v. Oklahoma (1988) 487 US 815, 835). Their own vulnerability and comparative lack of control over their immediate surroundings means juveniles have a greater claim that adults to be forgiven for failing to escape negative influences in their whole environment. See Standford (v. Kentucky (1989) 492 US 361, 395) .... The reality that juveniles still struggle to define their identity means it is less suportableto comclude that even a heinous crime committed by a juvenile is evidence of irretrievable deprived character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, "(t)he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." Johnson (v. Texas (1993) 509 US 350, 368)." Rosenkrantz v. Marshall, Supra, 444 F.Supp. 2d at pp 1085.

In footnote 17 of Rosenkrantz, on pp. 1085, refers to a publication of materials on adolescent behavor that explains that "the conventional view is that "adolescence is roughly synonymous with teenager, or ages 13-19,"" but that "many scholars argue that adolescence begins at approximately age 10 and does not end until early 20"s.""

Petitioner was just barily 19 at the commission of his crimes. He had spent over nine years in child hell. Losing his father, his Mother leaving him behind, etc.. Yes an ADULT would have had a better chance of understanding it all. An adult mostlikely would have not done what he did. For the Board to expect an adolescent to act like an adult and to hold Petitioner to such a misguided and improper standard in order to deny him parole, violates Petitioner"s Due Process Rights and Liberty interrest in Parole.

The Parole Board refered to a 2002 Psyc. Report which states that Petitioner is no more of a risk to society as anyone already on the streets. All he has to do is refrain from drugs and alcohol as well as gangs. Yet., the Board ingoners this professional's report in favor of it's own twisted views of the facts, to demy parole. BOILER PLATE VERBAGE not supported by the evidence.

## THE BOARD IS REQUIRED BY LAW TO FOLLOW THE SAME LAWS, RULES AND REGULATIONS AS THE SENTENCING COURT DOES.

### - FACTS -

Penal Code Section 3041(a) clearly states that the Parole Board is to abideby the same laws, rules, guidelines and regulations that the Sentencing Court MUST abide by. Yet, it does not do so. It repeatedly relys upon allged facts and evidence (other than prison conduct) that has never been before the jury nor admitted as true by the Prisoner in court. In Petitioner's case they used claims made by the state for grounds to deny parole (Exhibit C, pp. 27-30) and set the next hearing date five years when the last parole hearing was only set for two years. The D.A.'S Office issued a Plea Bargain for Second Degree Murder, et al., yet, at each and every hearing claimed facts never admitted to by Petitioner in the agreement mor

proven to the Trial Court and/or the Sentencing Court as required by law.

The Board uses a probation report that is permitted to contain hearsay, dismissed charges, facts not proven to a jury nor admitted as true by the Defendant. It has conclusions of an over-worked State employee based upon their limited investigation and hand-written notes. Many Courts have raised concern over the inherant problems of probation reports containing materials normally not permitted into court by law and it's inherant misuse of false information.

## – LAWS –

Penal Code section 1192.2 states that a defendant cannot be punished for a crime not se pecified in a plea agreement. Jones v. United States ((1999) 526 US. 227, 243) the High Court held the limit on the State's authority to reallocate the traditional burdens of proof:

> "The Constitution safeguards that figure in our analysis concern not the identity of the elements defining criminal liability but only the required procedures for finding facts that determine the maximum possible punishment; these are the safeguards going to the formality of notice, the identity of the factfinders, and the burden of proof." Jones, supra, 526 US at pp. 243, n6.

In Apprendi v. New Jersey ((2000) 530 US 466) the High Court stated:

> "Since Winship, we have made clear ... that Winship's due process and associated jury protections extend, to some degree, "to the determinations that (go) not to a defendant's guilt or innocence, but simply to the length of his sentence." 530 US at pp. 484. "Our rule ensures that a state is obliged "to make its choices concerning the substantive context of its criminal laws with full awareness of the consequences, unable to mask substantive policy choices" of exposing all who are convicted to the maximum sentence it provides." 530 US at 489, n.16. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. ..."(I)t is unconstitutional for a legislature to remove from the jury the assessment of facts that increases the prescribed range of penalities to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." (Citaitions.)" 530 US at pp. 489.

In Issue II(A), pp. 7 herein, The state has determinied that the maximum ineligibility period for a indeterminate life sentence is the fixed term set by legislature.

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgement and determine punishment." Boykin v. Alabama ((1969) 395 US 238, 242.). "(A) statement in which the defendant 'disclos(es) his guilt of the charged offense(s) and which exclud(es) the possibility of reasonable inference to the contrary.' (Citations.)." People v. Kilpatrick (CA3d 1980) 105 Cal. App.3d 401, 413, 164 Cal.Rptr. 249, 356. "It is impossible to imagine prosecuting authorities would have made such an offer if they believed that they could show (defendant) acted (as now claimed at the BPH hearing). More importantly, the Board's finding that (defendant) acted in such a manner files in the face of the findings ...." In re Scott (2004) 119 Cal.App.4th 871, 15 Cal.Rptr.3d 32, 45. "A guilty plea "admits every element of the crime charged" (citation) and is a legal equivalent of a verdict (cite) and is tantamount to a finding (by a jury). (Citation.)" People v. Wallace (2004) 33 Cal.4th 738, 93 P.3d 1037, 16 Cal. Rptr.3d 96, 104. "A plea agreement is a contract; the government is held to the literal terms of the agreement." United States v. Johnson (CA 9th Cir. 1999) 187 F.3d 1129, 1134.

"Since Winship, we have made clear ... that Winship's due process and associated jury protections extend, to some degree, "to determinations that (go) not only to a defendant's guilt or innocence, but simply to the length of his sentence." Almendarez-Torres v. United States (1998) 523 US 224, 251. Apprendi v. New Jersey (2000) 530 US 466, 484. "(W)e acknowledged that criminal law "is concerned not only with guilt or innocence in the abstract, but also with the degree of criminal culpablity" assessed." Mullaney v. Wilbur (1975) 421 US 684, 697-98. Apprendi, supra, 530 US 466, 485.

Before the pronouncement of judgement in felony cases, the parties are entitled to a hearing to present evidence on factors in agrivation and mitigation affecting the sentence, before the court. Penal Code Sections 1170(b) & 1204; Calf. Rules of Court Rules 421, 423. Information included in the probation report must have some substantial basis for believing the information is accurate and reliable. People v. Calloway ((1974) 37 Cal.App.3d 905, 908). The defendant does not have the right to cross-examine the probation officer who made the report. People v. Arbuckle (1978) 22 Cal.3d 749, 754. Hearsay is admissible in the probation report. People v. Valdivia (1960) 182 Cal.App.2d 145; CA R of Ct. R 411.5. Witnesses's conclusory statements are also admissible. People v. Warren (1959) 175 Cal.App.2d 233. It may also include dismissed counts and cases. People v. Harvey (1979) 25 Cal.3d

754, 758. Also, counts that the defendant was acquitted of may be encluded. People v. Lewis (1991) 229 Cal.App.3d 259.

The High Court vacated a death penalty due to the court using a factor in agiravation that was not found true by the jury in Sochor v. Florida ((1992) 504 US 527, 540. If the state makes an increase in a defendant's sentence contingent on the finding of a fact, that fact must be found true by the jury beyond a reasonable doubt. United States v. Booker (2005) 543 US 220, 125 S.Ct. 738, 749. Ring v. Arizona (2002) 536 US 584, 602, The Sixth Amendment is very clear, any sentencing scheme that allows a finding of fact that is essential to a defendant's sentence to be found by anyone other than a jury violates the defendant's rights to have the jury find the facts beyond a reasonable doubt. Booker, supra, 125 S.Ct. at pp. 2537. Judges have long looked to the report complied by a probation officer, who the judge thinks more likely to have gotten the facts right than a jury, to determine the sentence. Booker, supra, 125 S.Ct. at 760. Blakely v. Washington (2004) 542 U.S. 296, 124 SCT ____ at 2542. Every defendant has the right to insist that the State prove to a jury all the facts mlegally essential to the punishment. Blakely, supra, 124 S.Ct. at 2543.

Since the High Courts of both the United States and California have held that a plea of guilt, such as given in a plea agreement, is more than just an admission – it is a conviction that excludes the possiblity of inferences to the contrary, which admits all of the facts listed in the agreement, IT IS ONLY those facts that can be used to determine the defendant's sentence, per the Sixth Amendment. The probation report can have any facts not proven to a jury, encluding those facts found not true by the jury(See Lewis, supra.), the probation report fails the standard set by Winship, and its prodigy. The use by the Board, clearly violates Petitioner's Constitutional Rights to have ALL of the factors proven in court – either by jury or his own admission of guilt, since the Law requires the Board to obey the same Laws, Rules, and Regulations that are binding on the Sentencing Court. Penal Code Section 3041(a). And the State cannot do a run around the Constitution and it's own laws by masking policy choices to allow the Board to do so.

## – CONCLUSION –

It is clear that the Board does not follow the laws of the State, let alone the laws of the Country, in conducting parole hearings. They ignore Court Orders on a regular basis, as if they never were issued. And in the case of the Petitioner, They have used the facts of the crime past the time permited by Legislature. Petitioner's crime carries a 15 to life, plus the gun use enhance-ment that brings the minium ineligibility for parole based on the crime to 20 years. Which expired in 1998, at the latest.

The Board refuses to accept Reasonalble Parole Plans in Mexico. Facts that Petitioner has or will have upon release, land, money, friends and family support, and work, is ignored without any evidence to the contrary by the Board. The Board ignores the facts that Petitioner was an adolescence under an enormus amount of stress at the time of the crime. That since his incarceration Petitioner has matured and given up those childhood recklessness and attitudes. They point to his RVR's while incarcerated. Yet, ignore the fact, that Petitioner gave up the life style of gangs and since that time, has only had a couple of rule violations in eleven (11) years, compared to the numerous ones prior to debriefing.

Then the Board tells Petitioner to get a vocation – while knowing the CDCR will not permit Petitioner to attend Vocational Training due to his Epilepsy. Basically violating the ADA. It also holds Petitioner's prior drug addiction as grounds for denial even though the ADA forbids the State for holding 'former' drug use as grounds for denial. Since it is considered a disability.

The Board further added insult to injury by setting the next hearing date five (5) years away, because the Petitioner would not sign a waiver for the hearing, in exchange for a two year denial. Even though it was ordered by the Superior Court of California, Marin Count to stop such illegal practices. It clearly shows that the Board was perjudice and had predetermined their decision prior to the hearing, in clear violation of Petitioner's Due Process Rigths, and the laws governing the Board.

Therefore Petitioner believes that he has Never received a Constitutionally adequate Board Hearing on the Proven Facts of his Case. Thus should be granted parole and allowed to return HOME to Mexico to live as a productive citizen.

III.

INEFFECTIVE ASSISTANCE OF COUNSEL, BEFORE,
DURING AND AFTER THE BPH BOARD HEARING
CA.P.C. SECTIONS 3041.5 AND 3041.7; TITLE 15,
SECTION 2256. U.S. CONSTITUTION FIFTH AMENDMENT.

- FACTS -

Upon being notified by BPH of the name and address of appointed counsel for the hearing, Petitioner wrote and sent the following items to counsel for consideration and introduction to the Board: A) Five page letter giving numerous cases that would support motions to the Board to disregard the unsupported claims made by the D.A. and law enforcement; B) Three page parole plan; C) A seven page statement to the Board; D) A letter to the Board; and E) A hand copied duplication of a CDCR Memorandum. See Exhibit F.

At the attorney - client meeting , Ms. Ludwig stated that she had received an envelope from the Petitioner, but had not opened it. Counsel explained that she had only read the BPT Summery Page of the last Board Hearing just prior to meeting with Petitioner. Ms. Ludwig did not want to review any of the facts and any other issues for the hearing. Ms. Ludwig stated that the Board wanted her to have Petitioner sign a waiver of unsuitability in exchange for a Board Hearing set in TWO YEARS. This waiver would allow the Board not to hold an actual hearing with the Petitioner. Counsel stated that the Board had already determined that Petitioner was not eligable for a parole date, and did not want to waist time on his hearing.

Counsel explained that if Petitioner refused to sign the waiver, the Board would set his next hearing date five years away. Which is the maximum time permitted by law.

Petitioner stated that he didnot believe that he was unsuitable for parole and would not sign a waiver saying so. That He wanted to present his case for parole to the Board. Ms. Ludwig stated that it was already decied that if he didnot sign the waiver, the Board would set his next hearing five years away instead of two years offered if he signed the waiver.

Petitioner asked counsel to prepare for the hearing and have motions ready to challenge the claims made by the D.A. and law enforcement. Petitioner also requested Counsel to Move that CDCR conduct a "pre-Board audit" as required by CDCR D.O.M. Section 7404.3.2. Counsel refused these requests, stating that it would

21

a waste of her time since the Board had already decieded not to grant suitability.

The 'pre-Board audit' would require up-dated materials on Psych-Reports, In Custody behavior, et. al.. Without such up-dated materials, it has been determined that the Board cannot conduct a proper hearing. Thus is required before each hearing. Counsel is suppose to make sure that CDCR does this audit. As it was, the Board relied on information that was clearly out-dated, and on incomplete/inaccurate information on Rule Violation Reports. Some of which had been adjudieated in Petitioner's favor and dismissed. But, due to the lack of a Pre-Heaning audit, were left in the file and not clarified as being adjudicated in any manner. See Exhibit C, Board Transcripts, where these were repeatedly mentioned.

At the Hearing, Counsel asked Petitioner to reconsider the waiver, stating that the Board didnot want to see him at all. That they would deny parole and set a date five years away, if he refused to waive his rights. At the hearing, Petitioner raised the issue of Counsel trying to pressure him into waiving his rights. Exhibit C, pp. 24:24-25:10. Counsel did not deny it, but stated that Petitioner did have the right to be present and present his case for parole.

The Board found that nothing had been updated from the 2002 and earlier hearings. Per Board policies, this should have stopped the hearing with the orders from the Board to CDCR to do a "Pre-Hearing audit' as required by regulations and Due Process. But, the Board forged ahead with out-dated information, ignoring their own policies and numerous Court Orders regarding this issue.

Counsel did not object to this nor to the use of out-dated data. Counsel had refused to prepare for the hearing by reviewing the Central File, as required to do to properly perpare for the heaning and to have inaccracies corrected prior to the hearing. Counsel did not move the Baard to postpone the hearing until Prison could do the Pre-hearing audit. Division 2 of the Title 15 CCR, claerly state the duties of parole hearing counsel. Counsel did not abid by these rules and regulations. To be on the Boards" approved counsel list for appointments, Counsel must show knowledge of the rules and regulations. Thus knows her duties to Petitioner.

After the hearing, Petitioner asked Counsel for the Parole Packet that the BPT had issued to her to prepare for the hearing and all documents sent to her on the behalf of and by Petitioner. She refused. Petitioner then made a formal written request under the State Bar's Rules of Professional Conduct, Rule 3-700(D)(1). Which state that the material is the property of Petitioner and must be turned over tho client upon request. No response from counsel. The State Bar was sent a complaint and failed to act upon it. At each level of State Habeas Court Proceedings, Petitioner asked the Court for discovery orders for these documents. The Courts denied each request and stated that the Petitioner had failed to make a prema facia case.

Ms. Ludwig represented many inmates before the board on November 01, 2005, along with Petitioner, Those that signed the waivers received a two year postponement to the next hearing. Those that did not sign the waivers, received a five year postponement. Petitioner asked the State Habeas Courts for discovery of such Board documents, and was denied. Petitioner asked Counsel for this information, and was ignored. Such a request would not violate any attorney-client confidentaility since no names would have been given. Just the numbers.

- LAWS -

Under CA.P.C. Sections 3041.5 and 3041.7; Title 15, CCR Section 2256, Petitioner has the statutory right to counsel at all parole hearings. The U.S. Constitution Fifth Amendment requires the effective assistance of counsel, when the right to counsel attaches. Title 8 U.S.C. Section 1362, grants aliens the statutory right to counsel in deportation hearings and the Court has held that such statutory right to counsel is governed by the Fifth Amendment. Reno v. Flores (1993) 507 US 292, 306, 123 L.Ed.2d 1.

California State Bar's Rules of Professional Conduct, Rule 3-110(C) requires counsel to have the necessary learning and skill to take a client's case. Rule 3-700 requires counsel to protect the future rights by turning over the client files to the client upon the request of the client.

Counsel is required to adequately investigate the case. In re Marquez ((1992) 1 Cal.4th 584, 596, 3 Cal.Rptr.2d 727. Failure to

23

challenge evidence. <u>People v. Ledesma</u> (1987) 43 Cal.4d 171, 233
Cal.Rptr. 404. Failure to investigate and/or object to the use of
unproven facts/evidence presented by the State. <u>Jones v. United
States</u>, supra, 530 US at 489; Et alli.

> "Ineffective assistance of counsel exists where, as a
> result of counsel's actions (or the lack thereof), 'the
> proceedings was so fundamentally unfair that the (inmate)
> was prevented from reasonably presenting his case.'"
> <u>Saakian v. INS</u> (CA 1st. Cir. 2001) 252 F.3d 21, 25.

See also, <u>People v. Bunyard</u> (1988) 45 Cal.3d 1189, 1215; 249
Cal.Rptr. 71; <u>Strickland v. Washington</u> (1984) 466 US 668, 688, 693,
104 SCt 2052, 80 LEd2d 674.

Counsel refused/failed to have CDCR update Petitioner's files
as required for and by the BHP for the proper hearing of an inmates
eligibility for parole suitability. While it could be argued that
counsel knew that no matter what she did to prepare for the Board
Hearing, the Board had already predetermined the outcome of the
hearing in advance. Yet, that is clear grounds for counsel to make
a solid record at the hearing for the future review by the Courts.
Since the predetermination of the outcome of a hearing by the Board
is forbidden by regulations and statutes, as well as Petitioner's
Due Process rights to a fair and impartial hearing.

The only thing that Counsel did do at the Board Hearing was to
assure her own continued appointments to inmates as counsel by the
Board. Thus securing her paycheck from them.

## - CONCLUSION -

Petitioner did not receive effective assistance of counsel,
before, at, and afterwards. Counsel knew she was ineffective and
was not obeying her legal duties to the clients she was appointed
to provide adequate counsel for. Thus, she refused to obey law
that requires her to turn over client files to the client. The Board
knows that this counsel will not be a advocate for the inmates she
represents, thus keeps appointing her. And worst of all, the State
Habeas Courts, have choosen to turn a blind eye to these facts -
allowing the Board to appoint counsel whos only intentions is to
get reappointed to other Hearings and make more money. Even to the
point of trying to strip away the Due Process and Fair Hearing
Rights of the Prisoner, with the Board.

IV.

## PETITIONER HAS A CONSTITUTIONALLY
## PROTECTED LIBERTY INTEREST IN PAROLE.

Petitioner has exceeded the Statutory maximum ineligibility period set by law for second degree murder and weapon use determinate sentence that gave a total of 20 to life by June 1998. At that point, by California Laws, Petitioner became eligable for parole. Unless, the Board could point to facts admitted to by Petitioner at the plea agreement Hearing, that proves that the offense(s) were especially heinous, attrocious or cruel. In comparision to other Second degree murders.

The Board did not do this, and unless they can specify the actual factors and evidence relied upon to support this findings, of especially ..., the Board cannot parot the words and justify denial. The Board is also required to weigh all evidence in both tending to show unsuitability as well as suitability. But in the case of the Petitioner, the Board ignored evidence of suitability, and at times, used the evidence of suitability to find unsuitability.

Like, that Petitioner was having family problems, See Memorandum of Facts, pp. 1-4, herein. These problems of an adolescent lead to the commission of the crimes. Since the Petitioner has reconciled wiht his Mother (before her death) and Her Husband, which shows that the termole of childhood has passed, and that Petitioner has grown up emmotionally. That such emmotional strees is unlikely to reoccure.

Likewise, the Board uses his choice to not contact his ex-girlfriend and their child, as grounds for denial. Do they want Petitioner to disrupt these peoples lives in order to prove that he is eligible for parole?

The Board also points to the numerous CDCR-115's and 128's Petitioner received while associated with prison gangs. While ignoring facts that since his debriefing, he has only had a couple of write-ups, which occured after his Mother's death while coming to visit him at Calipatria State Prison. Very few prisoners can get through their terms without some kind of write-ups. They are the exception, not the rule. Prior to 1984 Petitioner had 19 CDCR-115's. After that he had 7 CDCR-115's. For nearly 10 years, Petitioner had NO CDCR-115's. And some of the CDCR-115's in 2004, were dismissed or adjudicated in his favor, but not excised from the file.

See Exhibit G, section D of the Life Prisoner Evaluation. For the complete run-down of disciplinary history.

The Board also held that Petitioner needs more therapy to become eligable for parole. Even though the Psychirist Report says the opposite. That Petitioner is no more of a risk to society as anyone already out there. As long as he stays away from gangs, drugs and alcohol. He has both Family and Friends to assist and support him in this requirement.

The Board held that he needs more education and training to be eligable. Ignoring the fact that Petitioner has a GED and has repeatedly tested with a 12.6 GPL. Exhibit G, section B. That per CDCR and Prison Policy, Petitioner cannot particapate in Vocational training classes due to his epilepsy.

ETC. ETC. ETC.....

## – LAWS –

In the case of In re Scott ((CA 1st Dist. 2004) 119 Cal.App.4th 871, 15 Cal.Rptr.3d 32) the court held the following to be true:

1. Parole is the rule, not the exception;
2. Conviction for second degree murder does not render one unsuitable;
3. To demonstrate "an exceptionally callous disregard for human suffering" the commission must have been more violent than ordinarily shown for second degree murder;
4. An "imexplicable motive" is one that is unexplained or unintelligible;
5. While the Board holds broad discretion over parole suitability, it is not complete, IT MUST ABIDE by the laws;
6. Facts relied upon by the Board cannot differ from those established in the Court Room – about the circumstances of crime(s) and the situations surrounding the commission;
7. ET ALII ....

In the Case of In re Criscione (Exhibit E) the Court held that:

"As noted supra, a reason the proof in this case irrefutably establishes constitutional violations is because the Board does not, in actual fact, operate within the limiting construction of the regulations." at pp. 26.
"This practice results in violence to the requirements of due process and individualized consideration which are paramount to the proper exercise of its broad discretion." at pp. 27.
"The PC Section 3041(b) exception to the rule can only be invoked when the "gravity of the current convicted offense or offenses, or the timing and gravity of current or past offense or offenses, is such that consideration of public safety requires a more lengthynperiod of incarceration for this individual." The word "gravity" is a directive for comparison just as "more lengthy" indicates a deviation from the norm." at pp. 28.

"By simple definition the term "especially" as contained in section 2402(c)(1) cannot possibly apply in 100% of cases, yet that is precisely how it has been applied by the Board. As pointed out by the Second District Court of Appeal, not every murder can be found to be "atrocious, heinous, or callous" or the equivalent without "doing violence" to the requirements of due process. (In re Lawrence (2007) 150 Cal.App.4th 1511, 1557.) This is precisely what has occured here, where the evidence shows that the determinations of the Board in this regard are made not on the basis of detailed guidelines and individualized consideration, but rather through the use of all encompassing catch phrases gleaned from the regulations." at pp. 12-13.

In the In re Rutherford/now Lugo case before the Superior Court of California for Marin County (Case No: SC 135399A) a Class Action suit against the Board, Honorable Judge Verna A. Adams, has found that the Board not only overdue in having hearings for lifers, but had instigated an illegal method to reduce the back-log by having Lifers sign Waivers in exchange for a two-year postponement, and for those Lifers that refused to sign such waivers, they were given up to five years before the next hearing even when nothing had occured since the prior hearing to justify such a drastic delay.

At the August 31, 2004 hearing, the Respondents stated:

"(T)hey will comply with the mandate of PC Section 3041.5 only if and when an inmate seeks and obtains relief in habeas corpus; otherwise, Respondents conceded that they will continue to do what they have done in the past,..." Court Order Dated February 15, 2006, pp.4, Exhibit I.

In March 23, 2006 the Board agreed to stipulated Procedures to correct their 'procedures'. Yet to this dated, have done everything but follow them. It is now on appeal. But the findings of the Superior Court is not being challenged, just the policy to correct the problems.

As shown in Exhibit H, BPT Life Prisoner Decision Face Sheet, The Board fully expected Petitioner to sign the "unsuitability" waiver form 1001A, prior to the hearing. They had already marked the box for it, and had to change it. This shows that it pre-determined to deny parole and that they punished Petitioner for exercising his legal rights to present his case to the Board.

Prisoners have the Liberty interest in Parole and the Due Process rights to a fair and impartial Parole Hearing. In re Lowe (CA 6th Dist. 2005) 130 Cal.App.4th 1405, 1421; In re DeLuna (CA 6th Dist. 2005) 126 Cal.App.4th 585, 591; In re Rosenkrantz

27

(2002) 29 Cal.4th 616, 654; et al..

The board had no reasonable grounds to reject the findings of the psychologist, and by law are required to accept the findings. In re Smith (2003) 114 Cal.App.4th 343, 369. Even with an old report compiled for the previous Board Hearing. The report clearly states that the Petitioner is not anymore of a danger than any other citizen on the streets is.

> "(C)rimes have little, if any, predictive value for future criminality. Simply from the passing of time, crimes almost 20 years ago have lost much of their usefulness in foreseeing the likelihood of future offenses than if he had commited them five of ten years ago." (In re Lee (2006) 143 Cal.App.4th 1400, 1412.)" Exhibit E, In re Criscione, pp 16.

The United States Supreme Court stated that the only evidence that has indicia of reliability can be used by the sentencing court to determine that persons lenth of sentence. Evidence found true by the Jury or admitted to be true by the Defendant at court. Blakely v. Washington, supra; Apprendi v. New Jersey, supra; In re Winship, supra; et al.. And since the P.C. Section 3041 (a) specific-aílly state that the Board must follow the same rules and regulations that the Sentencing Court must follow, these Case Laws protecting Due Process Rights in the determination of length of sentences, MUST be followed by the Board. Especially since the Petitioner has exceeded the maxium minium of parole ineligibility set by law for his crimes. The Board Must point to actual facts supported by reliable evidence to support their findings of unsuitability, or set a parole date. P.C. section 3041; In re Lawrence, supra; et al..

There is no Factual reliable evidence for the Board to hold that Petitioner was a danger to public safety above the danger that any citizen on the streets present. There is not one piece of evidence that Petitioner's parole plans are unreasonable. He has job offers, housing, land and money, as well as the emmotional, physical and materials support of family and friends. Petitioner has a GED and a 12.6 GPL. He has a stable relationship with his Family. He has matured since the crime. He was under a great deal of stress at the time that caused an adolesent to strike out. That stress no long exists.

The Board's denial is clearly Boiler Plate verbage.

V.

## THE STATE HAS VIOLATED THE PLEA BARGAIN AT ALL PAROLE HEARINGS BY CLAIMING 'FACTS' NOT ADJUDICATED IN COURT IN SUPPORT OF FINDING PETITIONER UNSUITABLE FOR PAROLE.

### - FACT -

In the plea agreement, the District Attorney's Office specified each and every fact that they wanted Petitioner to admit to in exchange for Second Degree murder sentence of 19 to life (Petitioner picked up an additional one year sentence while incarcerated).

Petitioner, in open Court admitted to all facts stipulated by the Plea Bargain and the Court accepted the plea and the agreement.

At each and every hearing of parole suitability, the State - i.e., the D.A.'s Office, has introduced a written statement of their current views of the crime, which differs extreamly from the Plea Agreement facts. They have claimed repeatedly, that it was not acctually a second degree murder, but an execution style pre-meditated murderous rampage. And so on. (Court will have to issue a discovery order to obtain the written statements, since Board Appointed Counsel has refused to turn over the documents and the State Habeas Courts have refused to issue discovery orders and an evidentary hearing on the matter.)

### - LAWS -

A Plea Bargain is a contract between the state and the charged individual that certain specified facts are true in exchange for a plea of guilt to the specified charge(s), etc.. The State must abide by the agreement it makes as long as the individual does. If either party violates the agreement, the plea is void. Santobello v. New York (1971) 404 US 257, 262; et al.. The State is held to the literal terms of the agreement. United States v. Johnson (CA 9th 1999) 187 F.3d 1129, 1134; et alli.. The plea excludes the possibility of reasonable inferences to the contrary, bind the parties to the agreed upon facts of the case. People v. Kilpatrick (CA 3d 1980) 105 Cal.App.3d 401, 413, 164 Cal.Rptr. 349. Under Cal.P.C. section 1192.2 a person cannot be punished for facts and acts not specified in the plea agreement. PC. section 3041(a) binds the Board to the facts adjudicated in court - not the later claims by the state.

"It is impossible to imagine prosecuting authorities
would have made such an offer if they believed that they
could show (defendant) acted (as now claimed at the BPH
hearing). More importantly, the Board's finding that
(defendant) acted in (such a) manner flies in the face
of the findings ...." In re Scott (2004) 119 Cal.App.4th
871, 15 Cal.Rptr.3d 32, 45.

In the parole context, the requirements of due process must be
met by the reliance on evidence that has been adjudicated in court,
on the crime itself. Briggs v. Terhune (CA 9th Cir. 2003) 334 F.3d
910, 914; Jones v. United States (1999) 526 US 227, 243; Apprendi
v. New York (2000) 530 US 466, 484, 489, n.16, 489; et al....

The D.A. is an Officer of the Court and the Represenative of
the State. As such, they are required to obey the Rules of Profes-
sional conduct. Filing false and/or misleading documents presumes
an intent to secure a determination based upon them and is a
clear violation of law. Davis v. State Bar (1983) 33 Cal.3d 213,
239-240, 188 Cal.Rptr. 441, 445, 655 P.2d 1276; Olguin v. State
Bar ( 6 )28 Cal.3d 195, 199-200, 167 Cal.Rptr. 876, 616 P.2d 858;
Rule 7-105, State Bar Rules of Professional Conduct; et al..
Conduct unbecoming is conduct contrary to Professional Standards
that show an unfitness to discharge obligations to the Court, the
State and the Law. In re Snyder (1985) 472 US 634, 644-45; Theard
v. United States (1957) 354 US 278, 281; et al..

Dispite repeated rulings by the courts on parole boards
relying on the claims of the D.A.'s that donot correspond to the
facts adjudicated in court regarding the commitment offense(s),
the D.A.'s and the Board continue to rely on facts not adjudicated
in accordance to due process to determine unsuitability.

How many defendants would accept a plea agreement in exchange
for a life max sentence, if the D.A. stated in court that they
were not bound to the agreed upon facts and would present un-
adjudicated 'facts' at the parole hearings to keep defendant
incarcerated for the max term of life????

The fact that the Board accepts and clearly supports such
actions of the DA., raises the question of legality of the whole
parole hearing process. The fact that numerous courts have found
that the facts relied upon by the Board presented by the State,
were not the ones found by the jury or admitted to by the Defendant

should raise some red flags that something is wrong. Especially,
since they continue to do so, even after the courts speciffically
state that the facts are not supported by the evidence properly
adjudicated at trial, or plea hearing. The Board has repeatedly,
reused the facts in the rehearings ordered by the courts. Showing
total disregard for the courts and the laws.

The Defendant has the constitutional right to have the State
prove to a jury all the facts legally essential to the punishment.
This includes plea agreement facts - in as much as that the
defendant admitts to those facts stated in the agreement as true,
just as if a jury found them. Any fact not expressily admitted to
by the Defendant can not be used to determine his sentence. Blakely
supra, 124 S.Ct. at 2543. To allow the State to use facts not
subjected to the regors of jury and/or not agreed as true by the
state and defendant in a plea agreement, clearly violates the
Petitioner's Constitutional Rights, and Liberty Interest in Parole.

Since Parole is the rule, In re Scott, supra, et al., and not
the exception to the rule. Allowing the State to introduce un-
proven allegations in an attempt to support unsuitablity allows
the rule to be ignored for the exception.

## CONCLUSION

The State has intentionally deprived the Petitioner of his
Liberty Interest in Parole through the introduction of un-proven
allegations; Ignoring facts and findings without out any evidence
to the contrary; Ignoring any fact that shows eiligibility for
parole; Denying effective assistance of counsel; and so on.

Petitioner has suitable parole plans; he is not a threat to
society according to the Pscy reports; he has matured and developed
stable relationships with family and friends, an so on.... AND
has completed the statutory maximum of parole ineligibility set
by the state for his crime.

Thus the actions of the Board violates Petitioner's rights
and the Laws of the State and Country, requiring reversal and
court ordered release.

"However, the diferential "some evidence" standard has
outer limits. (Citation.) If it is established that a
particular judgment was predetermined, then a prisoner's
due process rights will have been violated even if there
is "some evidence" to support the decision. (See <u>Bakalis
v. Golembeski</u>, 35 F.3d 318, 326 (7th Cir.1994) (a
decision-making "body that has prejudged the outcome
cannot render a decision that comports with due process."");
see also, <u>In re Rosenkrantz</u>, 29 Cal.4th at 677, ... (a
parole decision "must reflect an individualized consider-
ation of the specified criteria and cannot be arbitrary
and capricious."") The California Supreme Court has
explicitly stated that a blanket no-parole policy as
to certain catagory of prisoners is illegal. (Citation.)"
<u>Martin v. Marshall</u>, supra, 431 F.Supp.2d at 1043.

In what little of the evidence Petitioner does have, a strong
showing is made for discovery of the materials denied by Board
Appointed Counsel in clear violation of State Laws; The Sentencing
and Plea Hearing Transcripts; et. al., as shown in Exhibit H,
the Board had already determined before the hearing not to grant
parole suitability and had encouraged Appointed Counsel to secure
a waiver of Suitability, which counsel did. Instead of preparing
for the hearing as required by Professional Conduct Rules and
the Constitution, and statutes. Counsel chose not to since she
knew that the Board had already made it's decision in advance of
the hearing.

    It is also shown, that the Board did not have any evidence
to contradict nor challenge Parole Plans, Psych. Report, et. al.,
that suppoorts suitability. The use of the crime, unless they can
and do point to specific evidence that was adjudicated in accordance
with Due Process Requirments, can not be used past the Statutory
maxium eneligibility period of 19 years (15 for the Second degree
murder, and 4 for the weapon use enhancement). As even the CDCR
and the Board documents show, in Exhibits G and H, the Petitioner
became eligible for parole, including the one year sentence, on
or about May 30, 1992. Petitioner calculates that from his arrest
on June 17, 1979 started the clock since he did not bailout of
jail prior to incarceration in the State Prison. Twenty years
ended on June 17, 1999. This encludes the determinate sentences
of 4 years and 1 year, with the 15 years of the <u>life</u> sentence.
Either number shows that the base ineligibility period set by law
expiried. The Board ignored laws and case laws prohibiting the use

the facts of the crime after the base ineligibility period had
passed, unless the proven evidence of the case shows it to be of
a greater or especially grave, heinous, atrocious incomparison to
other Second degree murders. But, instead of relying on the
evidence adjudicated in court', the Board relied on the claims of
the ᴮtate and the report of an over worked probation officer, that
under California Laws can contain unadjudicated 'facts', suppositions,
conjecture, hearsay, etc., that have not withstood the rigors of
Due Process.

The Board told Petitioner to get a vocational training,
while knowing that due to his epilepsy, the prison system willnot
permit him to obtain. This is a 'Catch-22' situation and a clear
violation of their regulations. (15 CCR sect. 2402(d)(8)) That uses
the word 'OR" in it, stating: "..has made realistic plans for
release or has developed marketable skills...". It does not use
the word "and". Petitioner has Realistic Plans for Release. He
has the support of family and friends as well as job offers and
housing. On top of which his Grandfather and ᴹother has left him
with a farm and money upon his release and return to ᴹexico. And the
Board had before it, the evidence of such. ᵞet it declared that the
Petitioner did not have realistic plans for parole, with no evidence
to support such a decision. Thus shows that their decision was
arbitrary and capricious, and not based on the evidence.

The Board violated their own regulations, Court Orders and
Rulings, State Laws that govern their actions, and Petitioner's
Legal Rights in denying parole suitability. The 'some evidence'
standard was not even met since that standard requires that the
evidence itself must meet the Due Process standards first, before
the Board can rely upon it, and they have not used any evidence
that meets this standard.

Petitioner was deprived of Liberty Interest in Parole by the
Board and the Board had already determined the out-come prior to
the hearing in direct violation of Constitutional ᴿights of
Petitioner. Thus, their decision doesnot meet the standards of
law, and cannot stand. The Board has shown numerous times to the
courts, that even if returned to them for a new hearing, they
are going to do business as usual and deny parole. Petitioner
therefore asks that upon showing of good cause that the

Court order his release and return to his native Country of Mexico forthwith, Instead of allowing the Board to delay the release by doing business as normal through a rehearing and having to re-litigate through the state courts.

Petitioner has changed and his prison record does reflect this change. Petitioner is no longer the adolesent that went on a temper-tantrum that ended up taking a life of an innocent by-stander. Petitioner can not change the past, no one can, but this Court can assist him in changing his present and give him a better future as a productive citizen. And is that not the main goal of punishment? To correct patterns that lead to illegal acts.

### PRAYER

Petitioner prays that the Court grant an evidentary hearing and grant appointment of cousel to conduct discovery to obtain the evidence that will support all of Petioner's issues, since the state courts have refused to hold such a hearing and denied the discovery requests.

Petitioner also requests that the Court, upon finde of the evidence protect Petitioner's future rights to Due Process since the Board has admitted to the Marin Superior Court, and has proven by its actions, that it willnot obey the laws and court orders without being forced to do so. That the Court removes the Parole determination from the Board in this case.

### VERIFICATION

I, Jose Ramirez-Salgado, Petitioner, hereby declares under the penality of perjury, thatnthe foregoing is true and correct to the best of my personal knowledge and belief, except for those things clearly stated being based upon information of other sorces and as to those, I beleive them to be true and correct. Signed this 25 Day of APRIL , 2008, at the Calipatria State Prison, Calipatria, California, 92233-5002.

Jose Ramirez-Salgado, C11124

34

# **VERIFICATION**

STATE OF CALIFORNIA
COUNTY OF IMPERIAL

_____

(C.C.P. SEC. 446 & 2015.5: 28 U.S.C. 1746)
I, _Jose Ramirez-Salgado_ DECLARE UNDER PENALY OF PERJURY THAT: I AM THE _Petitioner_
IN THE ABOVE ENTITLED ACTION. I HAVE READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF
AND THE SAME IS TRUE OF MY OWN KNOWLEDGE EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION,
AND BELIEF, AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

EXECUTED THIS _25_ DAY OF _April_ 2008 AT
CALIPATRIA STATE PRISON, CALIPATRIA CALIFORNIA 92233-5002

(SIGNATURE) _J Ramirez Salgado_
DECLARANT/PRISONER

_____

# PROOF OF SERVICE BY MAIL

(C.C.P. SEC. 1013 (a) & 2015.5 28 U.S.C. 1746)
I, _Jose Ramirez-Saigado_ AM A RESIDENT OF CALIPATRIA STATE PRISON, IN THE COUNTY OF
IMPERIAL, STATE OF CALIFORNIA, I AM OVER THE AGE OF EIGHTEEN (18) YEARS OF AGE AND AM / AM NOT A
PARTY OF THE ABOVE ENTITLED ACTION. MY STATE PRISON ADDRESS IS P.O. BOX 5002, CALIPATRIA STATE PRISON,
CALIPATRIA, CALIFORNIA 92233-5002.
ON _April 25_ 2008 IS SERVED THE FOREGOING:
1) Amended Petition for Habeas Corpus & Memorandum
2) Response to Court's Order

SET FORTH EXACT TITLE OF DOCUMENTS SERVED

ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A SEALED ENVELOPE(S) WITH
POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT
CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002.

U.S. District Court                          California Attorney General
Southern District California                 San Diego Office
325 W. F. Street                             P.O. Box 85266
San Diego CA 92101-6989                       San Diego CA 92186-5266

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND THERE IS REGULAR
COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED. I DECLARE
UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATE _April 25_ 2008    _J Ramirez Salgado_
(DECLARANT / PRISONER)