UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RAMIREZ-SALGADO,<br><br>   Petitioner,<br><br>vs.<br><br>LARRY E. SCRIBNER, Warden, et al.,<br><br>   Respondents. | Civil No.   08-0562 WQH (WMc)<br><br>**REPORT AND RECOMMENDATION RE: DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

**I.   INTRODUCTION**

Jose Ramirez-Salgado ("Salgado") is a California prisoner serving a sentence of twenty years to life, with the possibility of parole, for second degree murder, robbery, assault with a deadly weapon and use of a firearm. He has filed a First Amended Petition ("FAP") for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging the November 1, 2005 decision by the California Board of Parole Hearings ("BPH") denying him parole. This Court has reviewed the Petition, Respondents' Answer, the Traverse, and all supporting documents. After a thorough review of the record, the Court finds that Petitioner is not entitled to the relief requested and **RECOMMENDS** that the Petition be **DENIED**.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

The facts are taken from the BPH's summary during the 2005 parole hearing. On June 16, 1979, Salgado approached Sidney Pierce and Matthew Foster while they were walking on Wilson Avenue. (*See* Lodgment No. 2, Exh. 1 at 11.) He robbed them at gunpoint and told them to start running. When they did, he fired his gun several times at them. (*Id.*) Pierce was struck in the neck. Salgado and the

1 victims ran down an alley where Salgado fired more shots. (*Id.*) A vehicle driven by a Mr. Holley, and in which Holley's son was a passenger, entered the alley. Salgado pounded on the car, fired three shots at them but missed. (*Id.*) Salgado then ran further down the alley. Victim Lang came out of his house to investigate and was shot and killed by Salgado. (*Id.*) Salgado continued running down the alley and encountered victim McCloud. Salgado robbed McCloud at gunpoint, then told him to run. (*Id.* at 12.) McCloud heard a shot, turned around, and started walking back toward Salgado. Salgado then ran, firing another shot. (*Id.*)

Salgado was arrested the next day. (*Id.*) He pleaded guilty to second degree murder, robbery and assault with a deadly weapon. (Lodgment No. 3 at 1.) He was sentenced to an indeterminate term of twenty years to life. (*Id.*)

On November 1, 2005, the BPH held a parole hearing for Salgado. (Lodgment No. 2.) After hearing from Salgado, Deputy District Attorney A. Rodriguez, and Linda Ludwig, Salgado's attorney and reviewing the documents related to Salgado's case, the BPH denied him parole. (*Id.* at 25-30.)

Salgado filed a Petition for writ of habeas corpus challenging the BPH's denial in the San Diego Superior Court, which issued a written, unpublished opinion denying the Petition. (Lodgment Nos. 2, 3.) He filed a habeas corpus Petition in the California appellate court, which also denied the Petition in a written, unpublished decision. (Lodgment Nos. 4, 5.) Finally, he filed a habeas corpus Petition in the California Supreme Court, which denied the Petition without citation of authority. (Lodgment Nos. 6, 7.)

## III.   DISCUSSION

A.   *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997); *see also Redd v. McGrath*, 343 F.3d 1077, 1080 n.4 (9th Cir. 2003) (provisions of AEDPA apply when state prisoner challenges constitutionality of state administrative decision, such as denial of parole); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-27 (9th Cir. 2006). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly

established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). Additionally, the state court's factual determinations are presumed correct, and Salgado carries the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1) (West 2007).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly

1  ///

2  established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth

3  by the Supreme Court at the time the state court renders its decision." *Lockyer*, 538 U.S. at 72.

    B.    *Analysis*

In his petition, Salgado raises three claims.[1] First, he argues the denial of parole violated his federal rights to due process and equal protection because the BPH relied on the unchanging facts of the offenses and because the BPH's conclusions were not supported by sufficient facts. (FAP at 7.) Second, he argues that the attorney who represented him at his parole hearing rendered constitutionally ineffective assistance. (FAP at 8.) Third, he claims the state has violated his plea bargain by using facts which were not adjudicated in court to support his denial of parole. (FAP at 10.) Respondent counters that Salgado has not established the state court's decision denying Salgado's claims were neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Respondent also contends Salgado has not shown the state court's decision was based on an unreasonable determination of the facts. (Mem. P. & A. Supp. Answer at 1-7.)

    1.    *Improper Denial of Parole/Unreasonable Determination of the Facts*

Under clearly established Supreme Court law, Salgado's due process claim is analyzed in two parts. First, the Court must determine whether Salgado has a liberty interest of which he has been deprived. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). If so, the Court must determine whether the procedure used to deprive him of that liberty interest was constitutionally sufficient. *Id.* Respondent argues that the only clearly established Supreme Court law under which Salgado's due process claim can be analyzed is *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979). In *Greenholtz*, the Supreme Court held that there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," but acknowledged that a state can create "a liberty interest protected by due process guarantees" when its parole scheme employs "statutory language [that] itself creates a protectible interest in parole "

---

[1] Salgado's petition actually contains five claims. Claims two and four, however, state essentially the same claim. In addition, claim one argues that the state court's factual findings are not entitled to a presumption of correctness, which the Court construes as an allegation that the state court's denial of his claims was based on an unreasonable determination of the facts.

*Greenholtz*, 442 U.S. at 11-12. Under *Greenholtz*, due process requires only that a prisoner be given an opportunity to be heard and reasons for the decision to deny parole. *Greenholtz*, 442 U.S. at 7, 16. Respondent contends that because Salgado received a parole hearing and was provided with the reasons for the denial, he has received all the process he was due under *Greenholtz*. (Mem. P. & A. Supp. Answer at 1-3.)

The Ninth Circuit has repeatedly held that California's parole scheme, codified in California Penal Code section 3041, vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (*citing Sass v. Calif. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillon v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002)); *see also Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000) (finding that Ninth Circuit "cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Having determined Salgado does have a protected liberty interest in a parole date, the Court must proceed to the second, more contentious prong of the due process analysis: whether the procedure afforded Salgado was adequate. *Thompson*, 490 U.S. at 460.

The Ninth Circuit has concluded the Supreme Court's decision in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985), which held that "revocation of good time [credits] does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record," *Hill*, 472 U.S. at 454, applies with equal force to the denial of parole "because both directly affect the duration of the prison term.'" *See Sass*, 461 F.3d at 1128-29 (quoting *Jancsek v. Oregon Bd. of Parole*, 833 F.3d 1389, 1390 (9th Cir. 1987). The court further held that the "some evidence" standard was clearly established Supreme Court law for AEDPA purposes. *See id*., 461 F.3d at 1129; *see also Duhaime*, 200 F.3d at 600.

Respondent argues this Court is not bound by the "some evidence" rule because it is neither clearly established Supreme Court law nor did the Ninth Circuit base its decision on clearly established Supreme Court law. (Mem. of P. & A. in Supp. of Answer at 6.) Contrary to Respondent's suggestion,

1  this Court is bound by Ninth Circuit authority. Accordingly, the Court recommends rejecting this
2  argument. The Court will conduct the due process analysis under the "some evidence" standard as
3  delineated by *Sass*:

> To determine whether the some evidence standard is met, "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by [the parole board or the governor] . . . . *Hill's* some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the [parole board or governor] were without support or otherwise arbitrary."

*Sass*, 461 F.3d at 1128-29 (quoting *Hill*, 472 U.S. at 455-57.); *see also Irons*, 479 F.3d 658.

When determining whether "some evidence" supports a denial of parole, "[the] analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 479 F.3d at 662. Thus, the Court "must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole." *Id.* The Court must then "determine whether the state court decision holding that these findings were supported by 'some evidence' . . . constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454 [citation omitted]." *Id.*

California prescribes indeterminate sentences for non-capital murders: twenty-five years-to-life for first degree murder and fifteen years-to-life for second degree murder. Cal. Penal Code § 190. One year prior to the expiration of a prisoner's minimum sentence, a BPH panel meets with the inmate and "set(s) a release date unless it determines that the gravity of current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy incarceration." Cal. Penal Code § 3401(a). The criteria for determining parole suitability are found in the California Codes of Regulations, Title 15, § 2401(a) and (b) (2008). Regardless of the length of time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). California's parole scheme requires that the BPH have "some evidence" that the inmate will be a continuing threat to society in order to deny parole. *See In re Dannenberg*, 34 Cal.4th 1061, 1095 (2005). Section 2402(b) states "[a]ll relevant

28  / / /

1 / / /

2 reliable information available to the panel shall be considered in determining suitability for parole." 15
3 Cal. Code Regs. § 2402(b). This includes:

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs.§ 2402(b).

At the November 1, 2005 parole hearing, the BPH articulated the following reasons for denying parole to Salgado:

> COMMISSIONER SALDAMANDO: The panel has reviewed the information received from the public and relied on the following circumstances in concluding prisoner is not suitable for parole, and would pose an unreasonable risk to society and threat to public safety if released from prison. The offense was carried out in a cruel and callous manner[,] there were multiple victims that were attacked and killed. The offense was carried out in a dispassionate and calculated manner[,] the offense was carried out in a manner which demonstrates exceptionally callous disregard for human suffering. The motive for the crime was inexplicable. You shot and killed one person, you shot another person during this one series of attacks. The prisoner has [on] previous occasions inflicted or [attempted] to inflict serious injuries on victims. The prisoner has a record of violence[,] the prisoner has an escalating pattern of criminal conduct and violence. He also has a history of unstable relationships with others. The prisoner has programmed in a limited manner while incarcerated. He failed to develop a marketable skill that he can put to use when released. He has failed to upgrade his vocational skills. He has not sufficiently participated in beneficial self-help or therapy programs. He has failed to develop evidence of positive change in that he has received five 128's and 27 115's[,] the latest as of April 6, 2004. And he continues to display negative behavior while incarcerated. The prisoner lacks realistic parole plans in [that] he does not have a marketable skill. The panel makes the following findings. The prisoner needs therapy in order to face, discuss, understand and cope with stress in a nondestructive manner[. U]ntil progress is made the prisoner continues to be unpredictable and a threat to others. Therapy in a controlled setting but motivation is questionable [sic]. In view of the prisoner's assaultive history, continued negative behavior and lack of program participation, there is no indication that the prisoner would behave differently if paroled. In a separate decision the hearing panel finds that the prisoner has been convicted of murder and it is not reasonable to expect that the parolee would be granted at a hearing during the next five years. Multiple victims were attacked and killed in separate incidents. The offense was carried out in a dispassionate calculated manner[,] again the offense was carried out in a manner which demonstrates exceptional callous disregard for human suffering. The motive for the crime was inexplicable. The prisoner has a record of violent behavior in that the prisoner again has 27 115's and five 128's. The prisoner has a history of unstable relationships with others[,] a recent psychiatric report dated January 23, 2002 authored by John R. Bellinger PhD. Indicates a need for a longer period of observation and evaluation and treatment. The panel recommends that the

    prisoner become and remain disciplinary free, work toward reducing his custody level, so that program opportunities will become more available. If available upgrade his vocational skills[;] if available, participate in self-help and therapy programs. And cooperate with clinicians in a complete clinical evaluation. Commissioner do you have anything to say?

    PRESIDING COMMISSIONER LEE: Well sir you have a very, very high classification score. Until you get your classification score [down] you cannot expect getting a date. So you are going to have to work at it.

    COMMISSIONER SALDAMANDO: Deputy Commissioner?

    DEPUTY COMMISSIONER ARMENTA: From 1980 to 1983 you got 19 115's. You dug your hole very deep and it is going to take a while to get out of it. And every year that you don't get a 115 you at least earn eight points and that's what you get.

(Lodgment No. 2, Exh. 1 at 27-30.)

    Salgado claims the BPH's reasons for denying him parole were insufficient for a number of reasons. First, he claims the BPH's reliance on the circumstances of the offenses is contrary to California law and thus violates his federal due process rights. (FAP at 20-22, 25-6, 29-31.) Second, he argues the BPH's determination that he did not have realistic parole plans was without support in the record. Salgado plans to return to Mexico and use money left to him by his mother and property left to him by the grandfather to operate a farm. (*Id.* at 26-27; *see also* Lodgment No. 2, Exh. 1 at 16-18.) Third, he contends the BPH improperly based its parole denial on Salgado's failure to obtain sufficient vocational training. Salgado claims he is unable to do so because he has epilepsy and is barred from participating in vocational training. (FAP at 28.) Fourth, he argues the BPH's improperly relied on his past unstable relationships (*Id.* at 31-33) Finally, he claims the BPH's reliance on facts not encompassed by his plea violates states and federal law. (*Id.* at 33-37.)

    The last reasoned decision to address Salgado's claims, to which this Court must look as the basis for its analysis, is the state appellate court's opinion denying Salgado's habeas corpus petition. *See Ylst*, 501 U.S. at 801-06. That court wrote:

    Jose Ramirez-Salgado is serving a prison sentence of 20 years to life after pleading guilty in 1979 to second degree murder, robbery and assault with a deadly weapon, and admitting he was personally armed with a firearm when he committed the offenses. On November 1, 2005, the Board of Parole Hearings (Board) held a hearing and declined to set a parole date, finding Ramirez-Salgado would pose an unreasonable risk to society or public safety if released. The Board based its decision on the cruel and callous nature of the offense, finding multiple victims were attacked or killed and the motive for the crime was inexplicable or trivial compared to the offense. The Board

further found Ramirez-Salgado has a record of violence, and escalating pattern of criminal conduct and a history of unstable relationships with others.  He has limited prison programming, failed to develop a marketable skill to use when released, failed to upgrade his vocational skills and has not sufficiently participated in beneficial self-help or therapy programs.  Further, Ramirez-Salgado failed to show positive changes in that he received 30 disciplinary reports while incarcerated, including two since his last parole hearing.

Ramirez-Salgado claims: (1) the Board relied on facts of the crime which were not admitted to him in his plea agreement, not found by the court at the change of plea hearing and not relied on by the prosecution in offering the plea bargain; (2) he received ineffective assistance of counsel before, during and after the suitability hearing because counsel advised him to waive his right to be present at that hearing; (3) the Board's findings he was unsuitable for parole were contrary to the facts, unreasonable and violated his due process rights; and (4) the Board violated his due process rights by punishing him for exercising his legal right to personally appear at ths parole suitability hearing and predetermining the outcome of that hearing.

The facts of the crime as stated in the Board's 2002 report are: Ramirez-Salgado robbed two men at gunpoint, taking cigarettes and $6.  He told them to run, and as they did so, Ramirez-Salgado fired several shots at them.  A bullet hit one of them in the neck.  Ramirez-Salgado ran down an alley, firing several more shots.  He approached a car occupied by a man and his son, fired several shots, but missed them.  When another man came out of his house to investigate, Ramirez-Salgado shot him three times in the chest, fatally wounding him.  Ramirez-Salgado approached a sixth victim and, at gunpoint, demanded his wallet.  The victim said he had no wallet.  Finding no wallet, Ramirez-Salgado told the victim to run and as the victim did so, Ramirez-Salgado fired several shots.

Where, as here, a prisoner refuses to discuss the facts of the crime, the Board's decision must be made on other available information.  (15 Cal. Code Reg., tit. 15, § 2236.)  Ramirez-Salgado cites no authority for the proposition that the Board may consider only facts admitted in the plea agreement, found by the court at the change of plea hearing or riled on by the prosecution in offering the plea bargain.  The Board acted properly in considering the facts of the commitment offense as presented in the Board's 2002 report.

Ramirez-Salgado claims he received ineffective assistance of counsel because his attorney tried to prevent him from appearing at the parole hearing.  However, Ramirez-Salgado personally appeared at the parole hearing and thus, any alleged deficiency by counsel did not prejudice him.  (*Strickland v. Washington*, (1984) 466 U.S. 668, 688; *People v. Waddle* (2000) 22 Cal.4th 690, 718.)

Ramirez-Salgado contends the Board's unsuitability finding was contrary to the facts, unreasonable and violated his due process rights.  However, the record shows that in finding Ramirez-Salgado was unsuitable for parole, the Board considered proper facts in an individualized manner.  There is some evidence to support the Board's decision. (*In re Dannenberg* (1995) 34 Cal.4th 1061, 1084.)  Further, Ramirez-Salgado has not provided a sufficient basis on which to show the Board punished him for exercising his legal right to personally appear at the parole suitability hearing and predetermined the outcome of that hearing.  (*In re Alvernaz* (1992) 2 Cal.4th 924, 945.)

The petition is denied.

(Lodgment No. 5 at 1-3.)

      a.    *Circumstances of the Offense*

California law permits the Governor to consider the facts surrounding the commitment offense in determining whether a prisoner is too dangerous to parole. *Dannenberg*, 34 Cal. 4th at 1071. However, as the Ninth Circuit has noted:

> [T]he denial of parole may be predicated on a prisoner's commitment offense only where the Board can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. *Dannenberg*, 34 Cal. 4th at 1071 [citations omitted]. Factors beyond the minimum elements of the crime include, *inter alia*, that '[t]he offense was carried out in a dispassionate and calculated manner,' that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs., tit. 15 § 2402(c)(1)(B), (D)-(E).

*Irons*, 479 F.3d at 663; *see also Rosencrantz*, 29 Cal. 4th at 678-79.

The Ninth Circuit has suggested in dicta, however, that while the BPH can look at immutable events, such as the nature of the commitment offense, to predict that a prisoner is not currently suitable for parole, in order to comply with federal due process guarantees the weight to be attributed to such events should decrease over time and as the prisoner demonstrates good behavior in prison. *See Biggs*, 334 F.3d 910; *Sass*, 461 F.3d 1123; *Irons*, 479 F.3d 658. Indeed, the Court has noted that "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 479 F.3d at 665.

Despite the Ninth Circuit's suggestions, however, "[t]here is no 'clearly established federal law, as determined by the Supreme Court of the United States,' that limits the number of times a parole board may deny parole to a murderer based on the brutality and viciousness of the commitment offense." *Culverson v. Davison*, No. 06-56827, slip op. at 2, 2007 WL 1663682 (9th Cir. June 8, 2007) (quoting 28 U.S.C. 2254(d)); *see also Kunkler v. Muntz*, No. 06-55555, slip op. at 4-5 (9th Cir. Mar. 7, 2007).[2] Accordingly, this Court cannot conclude that the use of Salgado's commitment offense alone to deny parole entitles him to relief. *See Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (holding that "[i]f

---

[2] Unpublished Ninth Circuit decisions may be cited commencing with decisions issued in 2007. (*See* Ninth Cir. Rule 36-3.) Although still not binding precedent, unpublished decisions have persuasive value and indicate how the Ninth Circuit applies binding authority.

no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.") Rather, this Court is limited to determining "whether the state court decision holding that the [Governor's] findings were supported by 'some evidence' . . . constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*." *Irons*, 479 F.3d at 662. As previous noted, "*Hill*'s some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the parole board or governor] were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1128-29.

In Salgado's case, the BPH cited "some evidence" to support the its denial of parole: the crime was carried out in a cruel, callous and dispassionate manner, there were multiple victims, and the motive for the crime was inexplicable. (Lodgment No. 2, Exh. 1 at 27-29; *see also Kunkler*, No 06-55555, slip op. at 4-5 (upholding Governor's decision to reverse parole grant as supported by "some evidence" where reversal based on the gravity of Kunkler's offense, namely that it was a second degree murder committed under aggravated circumstances). These reasons were amply supported by the facts of the crime. The record reflects Salgado robbed five individuals at gunpoint and shot at them, seriously injuring one and killing another. (Lodgment No. 2, Exh. 1 at 12.) These facts demonstrate there was time and opportunity for Salgado to reflect upon his actions and the consequences of those actions, and thus that "[t]he offense was carried out in a dispassionate and calculated manner." *See* Cal. Code Regs., tit. 15 § 2402(a), (b), (c)(1). Accordingly, the state court's denial of Salgado's claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Moreover, because there was amply factual support in the record to for the BPH's conclusion, the state court's decision was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (stating that in order for a petitioner to satisfy § 2254(d)(2), he must demonstrate that the factual findings upon which the state court's adjudication rests is objectively unreasonable).

/ / /

/ / /

/ / /

///

Salgado claims his equal protection rights were also violated by the denial of parole, but does not specifically identify how such a violation occurred. (FAP at 7, 25-26.) The Supreme Court has outlined the appropriate analysis for an equal protection claim:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). . . .The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. [citations omitted]. . . .The general rule gives way, however, when a statute classifies by race, alienage, or national origin. These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy — a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. [citations omitted].

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).

Salgado has not established how he was treated differently from similarly situated individuals. Because he provides no factual basis for this claim, he is not entitled to relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (stating that "c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief").

b.  *Lack of Realistic Parole Plans*

Salgado also claims the Board improperly based his parole denial in part on the fact he did have realistic parole plans, did not have acceptable employment plans and did not have a marketable skill. (FAP at 7, 26-27; Lodgment 2, Exh. 1 at 28.) At his hearing, Salgado stated that his first plan had been to return to Tijuana to start a business using money gained from the sale of land given to him by his grandfather. (Lodgment No. 2, Exh. 1 at 17.) Salgado stated that because the BPH was concerned about him being paroled in Tijuana, he now plans to re-start his grandfather's farm in Mexico using the land left to him by his grandfather and money ($50,000) left to him by his mother in a trust fund. (FAP at 26-27.) Salgado argues the BPH's determination that these plans were unrealistic was arbitrary and without support in the record. Respondent argues that the state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Mem. of P. & A. in Supp. of Answer at 4-6.)

///

The applicable California regulations require the prisoner to make "realistic plans for release" or have "developed marketable skills that can be put to use upon parole." 15 Cal. Code Reg. § 2402(d)(8). Certainly there is "some evidence" to support the BPH's determination that Salgado's plan to re-start his grandfather's farm was not realistic. He presented evidence that he owned his grandfather's property in Mexico via a certified copy of Mexican document which stated he was the sole heir to his grandfather's property. (Lodgment No. 2, Exh. 6 at.10) He did not present any evidence of the fifty thousand dollar trust fund he claimed his mother left him, however. He simply presented a letter from his sister Felipa Martinez stating she was keeping a bank account their mother had started for Salgado but that it is in Martinez's name. (*Id.* at 8.) She did not state how much money was in the account. (*Id.*) Further, the letters submitted by Salgado in support of his parole do not support his parole plan of returning to his grandfather's property and restarting the ranch. Rather, they reflect a job offer, a promise of a place to live and support for him when he returns to Tijuana. (*Id.* at 4, 7-9.) Finally, Salgado did not present any evidence establishing that he had the skills and experience to successfully re-start the farm. (*See* Lodgment No. 2, Exhs. 4-6.) Under these circumstances, it was certainly within the BPH's power and discretion to conclude that Salgado had not presented enough evidence to demonstrate that returning to Mexico and running a farm was realistic and there was ample factual support for such a conclusion. Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, nor was it an unreasonable determination of the facts. *See* Williams, 529 U.S. at 412-13; 28 U.S.C. § 2254(d)(2).

  c. *Failure to Obtain Sufficient Vocational Training*

Salgado also complains the BPH cited his failure to obtain sufficient vocational training as a reason for denying parole despite the fact he is barred from participating in many such programs due to his epilepsy. (FAP at 28.) The only evidence in the record which supports Salgado's claim he is unable to obtain further vocational training is his and his attorney's statements to that effect. (FAP at 28; Lodgment No. 2, Ex. 1 at 24.) Salgado has not provided the Court with any citations to regulations which prevent him from participating nor has he provided any documentation the prison authorities have declined his requests to participate in vocational training on the basis of his epilepsy. Without any

factual basis for this claim, the Court is unable to conclude that the BPH's reliance on Salgado's failure to obtain sufficient vocational training pursuant to California Code of Regulations, title 15 § 2402(d)(8) as one of the factors making him unsuitable for parole was not based on "some evidence" or that the decision was an unreasonable determination of the facts. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (stating that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.

          d.     *Past Unstable Relationships*

Next, Salgado contends the BPH improperly relied on his past unstable relationships with his family and girlfriend as a factor in denying him parole. (FAP at 31-33.) This is a permissible factor under the applicable California law, Cal. Code Regs., tit. 15 § 2402(c)(3). It is not clear what relationships the board was referring to when it stated that one of the reasons for the denial was Salgado's "history of unstable relationship with others." (Lodgment No. 2, Exh. 1 at 27.) According to Salgado himself, however, his mother left him in the care of his grandfather in Mexico when he was eleven years old while she traveled to the United States. (Lodgment No. 2, Ex. 2 at 9-11.) When he was twelve, he ran away from home and traveled to Tijuana, living on the streets until he could get across the border to find his mother. (*Id.*) He sold and used drugs while there. Eventually, he made his way to San Diego and located his mother, who he found living with her boyfriend (Salgado's father had died when he was nine). (*Id.*) He had a conflicted relationship with his mother and her boyfriend and began to hang out with gang members, drinking alcohol and using drugs. (*Id.*) During this time he also fathered a child. His girlfriend's father took the girlfriend and the child away and Salgado has had no contact with them. (Lodgment No. 2, Ex. 1 at 8.) This is certainly "some evidence" of Salgado's various past unstable relationships and an appropriate basis for BPH's denial of parole under California law. *See* Cal. Code Regs., tit. 15 § 2402(d)(3). Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, nor an unreasonable determination of the facts. *Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254(d)(2).

/ / /

///

e.    *Use of Facts Not Encompassed by His Plea Agreement*

Finally, Salgado complains the BPH improperly used facts that were not encompassed by his plea agreement to deny him parole. (FAP at 33-36.) In support of this argument, he cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and related cases which stand for the proposition that any fact which increases a defendant's sentence beyond the statutory maximum must be admitted or found by a jury beyond a reasonable doubt. (*Id.*) He contends that because the facts relied on by the BPH were not found by a jury or admitted by him, they cannot support his denial of parole. (*Id.*)

In a series of cases beginning with *Apprendi*, the Supreme Court has concluded that "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Cunningham v. California*, 549 U.S. 270, 275, citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Ring v. Arizona*, 536 U.S. 584 (2002); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005). The high Court has defined "statutory maximum" as "the maximum [a judge] may impose without any additional findings." *Id.*.

First, there is no clearly established Supreme Court law which applies the principles of *Apprendi* and its progeny to the use of facts to deny parole. In the absence of such authority, the state court's denial of this claim cannot be said to be contrary to or an unreasonable application of clearly established Supreme Court law. *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006). Moreover, the statutory maximum in Salgado's case is life. By denying him parole before his life term has been completed, the BPH has not extended his "maximum term." Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.

2.    *Ineffective Assistance of Counsel*

Salgado contends counsel was ineffective in representing him before the BPH. (FAP at 38-41.) Specifically, Salgado contends counsel improperly urged him to sign a waiver of hearing because, according to her, the BPH had already decided Salgado was unsuitable for parole. If Salgado signed the waiver, he would be eligible for a new hearing in two years. If he did not, the BPH would set

1  another hearing in five years. (FAP at 38-39.) In addition, Salgado claims counsel refused to file
2  motions, including a request for a pre-Board audit which would have required updated psychological
3  and custody reports, and refused to prepare for the hearing. (*Id.*)

4  Salgado's claim fails because the U.S. Constitution does not afford a right to counsel in the
5  context of parole board hearings. "[T]he protections of the Sixth Amendment right to counsel do not
6  extend to either state collateral proceedings or federal habeas corpus proceedings." *Bonin v. Vasquez*,
7  999 F.2d 425, 430 (9th Cir.1993); *see also Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir.
8  1987) (stating that "since the setting of a minimum term is not part of the criminal prosecution, the full
9  panoply of rights due a defendant in such a proceeding is not constitutionally mandated . . . ."); *Dorado
10 v. Kerr*, 454 F.2d 892, 897 (9th Cir. 1972) (stating that "due process does not entitle California state
11 prisoners to counsel at . . . sessions called to determine, administratively, the length of imprisonment,
12 and to grant or deny parole").

13 Even if Salgado had a right to the effective assistance of counsel at his parole hearing, Salgado
14 has not established he was denied that right. Under the applicable law, Salgado must first show his trial
15 counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*,
16 466 U.S.668, 687 (1984). "This requires a showing that counsel made errors so serious that counsel was
17 not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Judicial
18 scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. Second, he must show
19 counsel's deficient performance prejudiced the defense. *Id.* at 687. This requires a showing that
20 counsel's errors were so serious they deprived Salgado "of a fair [hearing], a [hearing] whose result is
21 reliable." *Id.* To satisfy the prejudice prong, Salgado must demonstrate a reasonable probability that
22 the result of the proceeding would have been different absent the error. *Id.* at 694. "A reasonable
23 probability is a probability sufficient to undermine confidence in the outcome." *Id*.

24 With regard to Salgado's first allegation, counsel's advice to Salgado to sign the waiver form
25 in order to ensure his next parole hearing would occur in two years rather than the five years the BPH
26 had indicated after a preliminary review of Salgado's file was reasonable and well within counsel's
27 strategic decision making powers. Counsel likely determined that no matter what they heard at the
28 hearing, the BPH would deny Salgado parole and it was in Salgado's best interest to secure a sooner

1  future parole date. *See id.* at 687-89. With regard to Salgado's second allegation, he has not established
2  prejudice as required by *Strickland* because he has not shown that the BPH would have granted him
3  parole had counsel filed motions and insisted on updated psychological and custody reports. *Id.* at 689.
4  Thus, Salgado has not established that the state court's denial of this claim was contrary to, or an
5  unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.

        3.       *Violation of the Plea Bargain*

Salgado contends the BPH's denial of parole breached the terms of his plea agreement because it deprives him of the benefit of his plea bargain. Specifically, Salgado argues the BPH has re-cast his conviction as a first degree murder even though he pleaded guilty to second degree murder. (FAP 42-48.) Respondent counters Salgado has not established there is any clearly established Supreme Court law that states a parole board must consider only facts contained in the plea agreement, and that cases Salgado cites which state that a jury must find every element of the offense upon which his sentence is based beyond a reasonable doubt are inapplicable to the parole setting. (Mem. P. & A. Supp. Answer at 5-6.)

"Plea agreements are contractual in nature and are measured by contract law standards." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993). The Due Process Clause of the federal Constitution confers on a defendant the right to enforce the terms of a plea agreement. *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

Salgado pleaded guilty to second degree murder. In exchange, he received an indeterminate term of fifteen years to life. (Lodgment Nos. 1, 2, 4.) There is no indication the plea agreement included any promise that Salgado would serve less than the maximum life term or that facts of the crime other than those agreed to in his plea agreement or the plea hearing would not be considered when determining whether he would be granted parole. Consequently, the BPH's denial of parole cannot be characterized as a "breach" of Salgado's plea agreement. The state court's decision was therefore neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See Williams*, 529 U.S. at 412-13.

/ / /

## IV. CONCLUSION

Based on the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**. This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **March 8, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 22, 2010**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: February 16, 2010

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court